# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2010AP1348-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against David A. Goluba, Attorney at Law: |
| | Office of Lawyer Regulation,<br>      Complainant-Appellant,<br>   v.<br>David A. Goluba,<br>      Respondent-Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST GOLUBA

| | |
|---|---|
| OPINION FILED: | April 17, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the Office of Lawyer Regulation, there were briefs by *Sheryl St. Ores*, assistant litigation counsel.

For the respondent-respondent, there was a brief filed by *David A. Goluba*, pro se.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2010AP1348-D

STATE OF WISCONSIN                 :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against David A. Goluba, Attorney at Law:**

**Office of Lawyer Regulation,**

   **Complainant-Appellant,**

 **v.**

**David A. Goluba,**

   **Respondent-Respondent.**

**FILED**

**APR 17, 2013**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1   PER CURIAM.   The Office of Lawyer Regulation (OLR) appeals the report of James W. Mohr, Jr., referee, recommending that Attorney David A. Goluba's license to practice law in Wisconsin be suspended for six months and that he be ordered to pay restitution to three aggrieved parties including the Wisconsin Lawyers' Fund for Client Protection (the Fund).  The OLR alleged seven counts of misconduct and sought revocation of Attorney Goluba's license to practice law, along with

restitution. The OLR contends the referee erred with respect to his finding that Attorney Goluba did not have ongoing knowledge of the misappropriation of certain client funds and erred in concluding that the OLR failed to establish that Attorney Goluba committed misconduct in violation of SCR 20:8.4(c). The OLR also appeals the recommended sanction, asserting that revocation is appropriate. The OLR seeks assessment of the full costs of this proceeding.

¶2 We adopt the referee's findings of fact and his conclusions of law, with the exception of one conclusion relating to Count 1, as will be discussed herein. We conclude that the referee's reasoning with respect to discipline is persuasive, and we agree that a six-month suspension of Attorney Goluba's license to practice law in Wisconsin is appropriate discipline for his misconduct. We agree with the referee's recommendations regarding restitution. Attorney Goluba shall reimburse the Fund in the amount of $30,000 plus legal interest, shall pay restitution to The Salvation Army in the amount of $2,655 for its legal fees incurred in connection with this matter, and shall pay $145 to client S.R. We further conclude that it is appropriate to reduce the costs of this disciplinary proceeding.

¶3 Attorney Goluba was admitted to practice law in Wisconsin in 1984. He has no prior disciplinary history. He is a solo practitioner in Ripon, Wisconsin. His wife, Janice, has long served as his legal secretary.

2

¶4 The complaint stems from two separate client matters: the Estate of W.S. and the matter of S.R. On August 18, 2008, Attorney Goluba's license was suspended for failure to cooperate with the OLR investigations into the alleged misconduct. Attorney Goluba's law license was also administratively suspended on June 17, 2009, for noncompliance with Continuing Legal Education (CLE) reporting requirements and again on March 11, 2011, for nonpayment of State Bar dues. His license remains suspended.

¶5 Attorney Goluba came to the OLR's attention in February 2007 when the Honorable Dee R. Dyer, Outagamie County circuit court, wrote a letter asking the OLR to investigate Attorney Goluba's handling of the Estate of W.S. because of a missing bequest owed The Salvation Army. Subsequently, R.L., the personal representative of the Estate (who is also the mother of Janice Goluba and Attorney Goluba's mother-in-law) filed a grievance in same matter.

¶6 On June 2, 2010, the OLR filed a seven-count complaint against Attorney Goluba seeking revocation. He filed an answer on June 21, 2010, proceeding pro se. Referee Mohr was appointed on July 19, 2010. Evidentiary proceedings encompassed ten days and were conducted between August 31, 2011, and November 1, 2011. The referee issued a thorough report and recommendation on February 11, 2012. The OLR appeals.

¶7 A referee's findings of fact are to be affirmed unless they are clearly erroneous. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740

3

N.W.2d 125. A referee's conclusions of law are reviewed de novo. Id.

¶8 The allegations, findings, and conclusions regarding the matter of S.R. are uncontested on appeal, so we address them first. S.R. was personal representative of her husband's estate. She hired Attorney Goluba to help her with the probate. S.R. delivered to Attorney Goluba titles to three vehicles that were in her husband's name, asking Attorney Goluba to have them retitled in her name. Attorney Goluba contends he did the work and mailed all the paperwork, together with S.R.'s check for the title transfer fees, to the Department of Motor Vehicles (DMV) in Madison. S.R. never received the titles.

¶9 S.R. made repeated telephone calls to the Goluba Law Office asking about the titles. Attorney Goluba testified that the DMV advised his office that any title applications would be processed in the order they were received; he thought they were still being processed by the DMV. Both Golubas testified they gave that information to S.R.

¶10 After almost 18 months of waiting, S.R. went to the DMV in Madison and changed the names on the titles herself. Attorney Goluba claims that when S.R. stopped calling him, he assumed that she finally had received the titles back from the DMV.

¶11 The OLR alleged and the referee agreed that Attorney Goluba committed three counts of misconduct in connection with this matter. By failing to follow up on the missing titles,

4

Attorney Goluba violated SCR 20:1.3[1] (Count 4). By failing to return telephone calls to S.R., Attorney Goluba violated SCR 20:1.4(a)(4)[2] (Count 5). Referee Mohr, however, recommended the court dismiss Count 6 which alleged that, by failing to return S.R.'s original title documents and fees, Attorney Goluba violated SCR 20:1.16(d).[3] The referee concluded that the OLR had failed to prove this violation. Attorney Goluba could not return the original titles to S.R. because he no longer retained them; the referee found that he did send them to the DMV. The referee agreed that by failing to timely respond to the OLR's investigation of this grievance, Attorney Goluba violated SCR 22.03(2),[4] enforceable via SCR 20:8.4(h)[5] (Count 7).

---

[1] SCR 20:1.3 states that a "lawyer shall act with reasonable diligence and promptness in representing a client."

[2] SCR 20:1.4(a)(4) provides that a lawyer shall "promptly comply with reasonable requests by the client for information; . . . ."

[3] SCR 20:1.16(d) states:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[4] SCR 22.03(2) states as follows:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The

5

¶12 The OLR does not dispute these findings or conclusions on appeal. We conclude that the record supports the facts as found by the referee, and we adopt his findings and conclusions of law relating to S.R. The referee recommended the court direct Attorney Goluba to pay restitution of $145 to client S.R. for the legal fees he charged her. The OLR concurs with the recommended restitution, and we accept this recommendation as well.

¶13 The second client matter is significantly more complicated and was litigated extensively in the proceedings before the referee.

¶14 On January 11, 2004, W.S. died. W.S. left a will naming R.L. as his personal representative. R.L. is the mother of Janice Goluba, Attorney Goluba's wife. Janice Goluba had been Attorney Goluba's legal secretary since 1984. Attorney Goluba had previously done legal work for R.L. and did R.L.'s

---

respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[5] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

taxes every year. Attorney Goluba never charged R.L. legal fees for this work. He only collected out-of-pocket expenses.

¶15 R.L. retained Attorney Goluba as her attorney to handle the probate of the W.S. Estate. The will listed 13 beneficiaries, including R.L. At Attorney Goluba's suggestion, R.L. deposited $424,156.69 of the estate's funds into Attorney Goluba's trust account on May 25, 2004, reportedly to facilitate payment of the bequests. The OLR deems this highly significant, noting this was the first time Attorney Goluba recommended R.L. deposit monies directly into his trust account.

¶16 All the checks to beneficiaries, cover letters to beneficiaries, and beneficiary receipts were prepared. The checks were signed by Janice Goluba, and the letters were signed by Attorney Goluba. All of the letters and checks were mailed on or about May 29, 2004, with one exception.

¶17 W.S. left The Salvation Army a bequest of $30,000. Janice Goluba prepared and signed a check to The Salvation Army in the amount of $30,000. It was never sent. Instead, the $30,000 was misappropriated and withdrawn from Attorney Goluba's trust account.

¶18 Between May and October 2004, in a variety of checks each made payable to Attorney Goluba, the money was withdrawn in odd amounts of a few thousand dollars, until all $30,000 was used up. The money was used to pay expenses of the Goluba household. The Golubas were extremely short of cash that year, in part because of the economy and in part because Attorney Goluba had significant health problems that year.

7

¶19 In March 2005 The Salvation Army began calling and writing Attorney Goluba wanting to know when it would receive its $30,000 bequest. After receiving no response, The Salvation Army hired Attorney Charles Maris in December 2005, who contacted Attorney Goluba. At one point, Attorney Goluba's office sent Attorney Maris a copy of a letter of transmittal with a copy of a check for $30,000 made payable to The Salvation Army. However, only a copy of the front of the check was enclosed, not the back of the check.

¶20 Attorney Maris requested a copy of the back of the check. When he did not receive it, he eventually entered an appearance in the probate matter and a hearing was conducted before Judge Dyer in Outagamie County circuit court on January 19, 2007.

¶21 Judge Dyer asked Attorney Goluba for proof that The Salvation Army had been paid. Attorney Goluba represented to the court that The Salvation Army had been paid and stated he had a copy of the cancelled check. Judge Dyer ordered Attorney Goluba to produce a copy of both sides of the cancelled check within seven days and to furnish a copy to opposing counsel.

¶22 Attorney Goluba could not produce a copy of the back side of the check. Attorney Goluba asserted this was the first time he realized there was a significant problem with The Salvation Army bequest. He realized his wife had misappropriated the funds. Janice Goluba has not denied this and repeatedly invoked her Fifth Amendment rights during her testimony at the evidentiary hearing, even after being advised

8

the referee could draw adverse inferences from her refusal to testify. The OLR maintains Attorney Goluba knew all along that the funds had been misappropriated.

¶23 In any event, approximately two weeks after the probate court hearing, the Golubas went together to R.L.'s home. The parties' versions of what transpired that evening are very different.

¶24 The OLR alleges that Attorney Goluba deceived and intimidated R.L. into writing him a check for $30,000 to cover the misappropriation. The OLR alleges that Attorney Goluba falsely told R.L. that she was personally responsible for this money because she was the personal representative for the estate. The OLR contends that, out of fear, R.L. wrote the check to Attorney Goluba's trust account.

¶25 Attorney Goluba admits that he and his wife visited R.L.'s home, but denies any misrepresentation. He says that R.L. voluntarily offered to write the $30,000 check in order to protect her daughter, Janice Goluba. Attorney Goluba used the check to pay The Salvation Army. In March of 2007, Attorney Goluba closed his law office.

¶26 Attorney Goluba then failed to respond to or otherwise cooperate with the OLR's investigation into the ensuing grievances. In discovery, Attorney Goluba claimed that most of his financial records from this time were lost or destroyed.[6]

---

[6] Attorney Goluba did not state that he intentionally destroyed relevant documents. He claimed the OLR did not request certain documents and that older documents were shredded and some documents were missing.

The OLR subpoenaed the bank records and laboriously reconstructed Attorney Goluba's trust and business account transactions. R.L. later sought and received reimbursement from the Fund in the amount of $30,000.

¶27 The OLR alleged three counts of misconduct relating to this matter. Count 1 alleged that by failing to hold in trust, and converting to his own purposes, $30,000 belonging to the W.S. Estate, Attorney Goluba violated SCR 20:1.15(b)(1)[7] and SCR 20:8.4(c).[8] Count 2 alleged that Attorney Goluba violated SCR 20:8.4(c) when he allegedly misrepresented to R.L., the

---

[7] Some of the misconduct alleged in Count 1 occurred prior to July 1, 2004. Therefore, there was a violation of former 20:1.15(a) as well as the current rule. Former SCR 20:1.15(a) applied to misconduct committed prior to July 1, 2004, and stated, in pertinent part, as follows:

> A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. . . . All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts . . . ."

Current SCR 20:1.15(b)(1) (effective July 1, 2004) states:

> Separate account. A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[8] SCR 20:8.4(c) provides it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

10

personal representative, that she was responsible for paying the $30,000, thereby inducing her to write a check to his trust account so that he could reimburse The Salvation Army. Count 3 alleged that Attorney Goluba failed to cooperate with the OLR's investigation, thereby violating SCRs 22:03(2) and 22.03(6),[9] enforceable via SCR 20:8.4(h).

¶28 Prior to the evidentiary hearing, Referee Mohr granted summary judgment to the OLR on Count 3 (W.S. Estate) and Count 7 (S.R.), concluding that Attorney Goluba had failed to cooperate with the OLR in both matters. Neither party appeals this conclusion.

¶29 Evidentiary proceedings were conducted on the remaining counts between August 31, 2011, and November 1, 2011. The referee issued his report and recommendation on February 11, 2012.

¶30 The referee's report is thorough and well written. The referee carefully explains that he considered the voluminous documentary evidence. He explains that he insisted on having R.L. testify in person. He explains further that while there were differences between the language in her grievance and her

---

[9] SCR 22.03(6) states:

> In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

subsequent testimony, he believed R.L.'s testimony at the hearing.

¶31 The referee emphasizes that the evidentiary hearing lasted ten days and produced thousands of pages of exhibits and over 2,000 pages of transcript. The referee implies that this was excessive, but does not explicitly make a finding to that effect. The OLR staunchly defends the need for "meticulous" recreation of the financial records and testimony about the Golubas' financial transactions.

¶32 The referee emphasizes that he listened carefully to all of the testimony, read many of the exhibits, re-read the transcript and his notes of the hearing, and reviewed all of the briefs submitted by the parties.

¶33 Ultimately, the referee found that Attorney Goluba discovered The Salvation Army had not been paid after the January 19, 2007 hearing before Judge Dyer, and realized, for the first time, that Janice Goluba had misappropriated the $30,000 bequest to The Salvation Army.

¶34 The referee was not persuaded by the OLR's theory that Attorney Goluba then preyed on R.L. The referee noted that the OLR had implied R.L. was "confused, fragile, of weak mind and of even weaker health." The referee states he "found just the contrary":

> I found [R.L.] to be charming, intelligent and with a remarkably good memory. She was 87 years old when she testified and, like a lot of people that age, she wasn't as spry as she used to be. She felt less competent than the actual impression she gave. A lot of people, attorney[s], children, grandchildren, and

12

others have worked with and talked to her, but when she was testifying, by herself at the hearing, I found her remarkably lucid, intelligent, confident, and with a good recall of events. Although her complaint and affidavits were somewhat contrary to the testimony she gave, I derived almost all of my conclusions from her live testimony. I was then able to view and judge her credibility the best.

The referee "found no evidence . . . that [Attorney] Goluba preyed upon [R.L.]."

¶35 The referee acknowledges that the OLR produced a detailed spreadsheet of each check that went in and out of Attorney Goluba's business and trust accounts. This spreadsheet shows that in 2004 the business account was constantly overdrawn and was kept alive only with the misappropriated funds.

¶36 The referee notes, however, that Attorney Goluba does not dispute any of this. Attorney Goluba does not dispute that The Salvation Army never received its check or that the money was misappropriated from his trust account. He also agrees that most, if not all, of the money was used to pay personal expenses of the Goluba household. Indeed, the referee noted that "[a]s far as I can tell, he has admitted this from the beginning."

¶37 However, the referee explicitly found that Attorney Goluba was not aware of the ongoing misappropriation of funds. The referee reached this finding based on record evidence and testimony of the people involved. He found that "it [was] absolutely clear who ran the details and the business of the Goluba Law Office. It was Janice Goluba. [Attorney Goluba] trusted her implicitly and gave her responsibility to handle most of the affairs of the office." The referee found and the

13

record supports his finding that Attorney Goluba experienced health problems unrelated to this case and was not able to function as efficiently as he had in the past. As a result, Janice Goluba assumed extensive responsibility for the office including keeping Attorney Goluba's calendar, making his appointments, drafting his letters, making his phone calls, picking up the mail, taking messages, handling all the billing and receipts, and making all of the payments. The referee stated, "In short, other than practicing law, she did everything else in the Goluba Law Office. [Attorney Goluba] trusted her implicitly and, to the best of his knowledge, she had never breached that trust."

¶38 The referee also made findings relating to the relationship between the Golubas and R.L., finding that "[o]ver the years [R.L.] gave substantial sums of money to her son . . . and also to her daughter, Janice [Goluba]."

¶39 The referee explicitly asked the question whether Attorney Goluba knew Janice Goluba had taken the $30,000 bequest and, based on the evidence from the hearing, found that he did not.

¶40 The referee rejected the OLR's theory that Attorney Goluba deceived and intimidated R.L. into producing the additional $30,000 used to reimburse The Salvation Army. The referee acknowledged R.L. stated that happened in both her grievance and in an affidavit signed by her, but the referee noted that she did not prepare either document; they were prepared by an attorney who represented R.L. during a period of

14

time she was estranged from the Golubas. The referee specifically stated:

> When I had the opportunity to see and hear [R.L.] in person, observe her demeanor, her recollection and credibility, there is hardly any doubt in my mind that [R.L.] was not intimidated, misled or frightened. I believe she was concerned for her daughter, as she had been many times in the past, and she simply asked what she could do to help out her daughter. She testified quite forthrightly that she wrote the check voluntarily, not because she was threatened or misled, but because she wanted to help her daughter. David Goluba accepted the check, put it in his Trust Account, and paid off The Salvation Army.

Thus, with respect to Count 2 the referee stated, "I do not find that [Attorney] Goluba engaged in any intimidation or misrepresentation with respect to [R.L.], and I do not believe OLR has proven that by clear, satisfactory and convincing evidence."

¶41 After detailing his factual findings the referee concluded that the OLR had proved by clear, satisfactory, and convincing evidence, that Attorney Goluba violated SCR 20:1.15(b)(1) for his failure to hold in trust $30,000 from the W.S. Estate which was properly the property of The Salvation Army (Count 1).

¶42 The referee concluded that the OLR failed to prove, by evidence which is clear, satisfactory, and convincing, that Attorney Goluba engaged in misrepresentations or intimidation toward R.L. concerning her responsibility for paying the $30,000, and therefore had not proven that Attorney Goluba violated SCR 20:8.4(c) (Count 2).

15

¶43 The referee also concluded that the OLR proved by clear, satisfactory, and convincing evidence that Attorney Goluba made at least two statements to the probate court of Outagamie County, Wisconsin, which were misrepresentations and thereby constituted a violation of SCR 20:8.4(c) (Counts 1 and 2).

¶44 The OLR appeals several aspects of the referee's report and specifically disputes the appropriate discipline and urges imposition of full costs.

¶45 With respect to the allegations in Count 1, the referee concluded that Attorney Goluba violated SCR 20:1.15(b)(1) by failing to hold property in trust, stating "indisputably, [since] the $30,000.00 was not held in trust and the Rule requires a lawyer to do so, there is a violation of this Rule." The facts of record support this conclusion, and we adopt it.

¶46 Count 1 also alleges that Attorney Goluba engaged in misrepresentation in violation of SCR 20:8.4(c).

¶47 The referee found that Attorney Goluba engaged in misrepresentation by filing a final account with the probate court representing that The Salvation Army had been paid $30,000, and by stating to the court on January 19, 2007, that The Salvation Army had been paid and that he had a cancelled check. The referee thus concluded that Attorney Goluba violated SCR 20:8.4(c) ("I find that Attorney Goluba, by filing a Final Account with the Probate Court, representing that The Salvation Army had been paid $30,000.00; and by stating to the Court on

January 19, 2007 that The Salvation Army had been paid and that he had a cancelled check, engaged in misrepresentations and therefore violated that Rule.")

¶48 This conclusion depends on the definition of misrepresentation used by the referee. The referee states that the terms "dishonesty, fraud, deceit or misrepresentation . . . are not generally defined." The referee then uses a definition of misrepresentation from First Nat'l Bank & Trust Co. of Racine v. Notte, 97 Wis. 2d 207, 293 N.W.2d 530 (1980). That case involved a claim of fraudulent representation by a lender in a contract negotiation. The court, considering whether a contract can be voided for mutual mistake of fact, stated "[a] misrepresentation is an assertion that does not accord with facts as they exist." Id. at 222. The Notte court then stated that liability may be imposed even when a misrepresentation was innocent, i.e., the person lacked actual knowledge they were making a factual misrepresentation. However, the definition of misrepresentation stated in Notte does not apply to lawyer disciplinary cases.

¶49 The Wisconsin Rules of Professional Conduct for Attorneys, SCR Chapter 20, defines "misrepresentation" as follows:

> "Misrepresentation" denotes communication of an untruth, either knowingly or with reckless disregard, whether by statement or omission, which if accepted would lead another to believe a condition exists that does not actually exist.

SCR 20:1.0(h).

17

¶50 Misrepresentation under the Wisconsin ethics rules requires communication of an untruth, either knowingly or with reckless disregard for truth. Whether the communication was made knowingly or with reckless disregard for the truth may be inferred from circumstances. See SCR 20:1.0(g) (a person's knowledge may be inferred from circumstance).

¶51 Here, the referee decisively found that Janice Goluba misappropriated the funds[10] and that Attorney Goluba lacked knowledge of the misappropriation of funds until after the court hearing. The referee's report contains the following factual findings made in connection with this issue:

- "From May, 2004 through October, 2004 Janice Goluba withdrew money from the Trust Account to pay personal and family expenses. David Goluba was unaware of these withdrawals at the time they were made" (emphasis added).

- "Janice Goluba did not put in the appropriate files, and did not give to her husband, much if not all of the correspondence from The Salvation Army or their attorney pertaining to the [W.S.] Estate. Likewise Mrs. Goluba did not advise Attorney Goluba of telephone calls received from Maris or The Salvation Army, concerning The Salvation Army's bequest from the [W.S.] Estate" (emphasis added).

- "Attorney Maris again wrote to Goluba on October 13, 2006, asking again for a copy of the back of the check. Attorney Goluba did not see and did not respond to that letter" (emphasis added).

In narrative the referee stated:

- "When one reads the transcript of that hearing, one is left with the clear impression that Goluba

---

[10] The referee states that "it is concluded that Janice Goluba unlawfully misappropriated the $30,000.00."

18

believed he had a cancelled check. He claims when he went to look through the records, [he] could find nothing. He then confronted his wife, and learned for the first time, he says, that she had misappropriated the $30,000.00. <u>Quite honestly, that has the ring of truth to it</u>" (emphasis added).

- "<u>In fact, there is no evidence anywhere in the record that Goluba actually knew the misappropriations were taking place until immediately after the conference with Judge Dyer on January 19, 2007</u>" (emphasis added).

- "It seems quite clear to me, based upon all of the testimony I heard, that Goluba's wife undertook the misappropriation; hid pertinent information about the [W.S.] file from Goluba, including all requests for information from The Salvation Army; and never advised Goluba of what documentation was needed to close the probate file."

- "<u>I don't believe he would have boldly told Judge Dyer that he had a copy of a cancelled check, nor would he have filed a Final Account with the Probate Court certifying that The Salvation Army had been paid, without honestly believing those two statements were true</u>" (emphasis added).

¶52 The OLR does not address the definition of misrepresentation used by the referee. The OLR focuses its argument on its assertion that the record evidence demonstrates that Attorney Goluba knew of the misappropriation such that the referee's factual findings to the contrary are clearly erroneous.

¶53 The OLR argues, vehemently, that the "record proves Goluba knew of the misappropriation of $30,000 of [W.S.] Estate funds which Goluba had deposited to his trust account." The OLR points to the following facts of record to support this assertion:

19

- Attorney Goluba requested R.L. place $424,156.69 into his trust account.

- Attorney Goluba claims to have lost, misplaced, or can't find essentially all of his trust account records and business records for a time period from 2002 to February 2, 2007.

- There was no cancelled check paid to The Salvation Army from May 2004 until February 2007.

- In less than five months, Attorney Goluba had an influx of $30,000 into his personal bank account.

- Attorney Goluba signed some of the trust checks at the time of conversion.

- Attorney Goluba admits he knew during 2004 that he was having a bad year financially, with insufficient cash flow to support himself, his family, and his home.

- Janice Goluba repeatedly invoked the Fifth Amendment as to theft of the $30,000 of trust funds.

- Attorney Goluba testified that he prepared the federal and state tax returns for the business and federal and state joint income tax returns. A review of the 2001-2007 returns shows that Attorney Goluba would have had to review all records of income and expense, including bank statements for both the business and the personal joint income, to prepare an accurate tax return.

¶54 In making these arguments, the OLR also defends its decision to create a "meticulous" and "full record" by "tracing . . . Goluba's use of his trust account." And, the

record does contain "copious data" and "[s]ummaries as to contacts between the probate division, the judge, the banks to Goluba, [The] Salvation Army, Attorney Maris, and others."

¶55 We readily acknowledge that circumstantial evidence may support a finding of misrepresentation. See, e.g., In re Disciplinary Proceedings Against Marks, 2003 WI 114, 265 Wis. 2d 1, 665 N.W.2d 836. Here, however, the referee considered the extensive documentary and testimonial evidence and found that Attorney Goluba did not know his wife had misappropriated the money. In making this finding, the referee referenced and considered the documentary evidence; it cannot be said that the referee did not consider the voluminous record prepared by the OLR.

¶56 The OLR focuses on the referee's statement that Attorney Goluba did not sign any of the checks drawing misappropriated monies from the trust account, contending this is clearly erroneous. The OLR points out that the record indicates he did, indeed, endorse some of these checks.[11]

---

[11] The referee stated that "[a]lthough each of the misappropriated checks from the Trust Account was written in his name, none of the endorsements on the checks appear to bear his signature." The OLR notes that Attorney Goluba admitted in his deposition that his signature was on trust account checks dated in 2004, with misappropriated trust funds occurring at the time he endorsed checks during 2004. Specifically, it appears he endorsed check no. 1702 for $3,500; check no. 1724 for $4,454.86; check no. 1003, Estate of W.S. signed by R.L. in the amount of $4,300; possibly a cashier's check for approximately $2,900; and check no. 1827, which appeared to be for $1,300 although Attorney Goluba testified it was not his signature on that check.

¶57 The referee noted, however, that the checks had been subpoenaed from the bank and were "poor" photocopies at best. The referee notes that Attorney Goluba testified he did not think it was actually his signature on these checks. The referee did not explicitly find that Janice Goluba signed her husband's name, but states, "[i]t would appear that the checks were written by his wife, made payable to Goluba, and then endorsed by his wife."

¶58 Even if the referee's finding that Attorney Goluba did not endorse some of these checks is error, it does not make the referee's finding regarding Attorney Goluba's knowledge of the misappropriation clearly erroneous. Considering the proper standard of misrepresentation applicable in disciplinary cases, together with the referee's clear factual findings, we accept the referee's factual findings, but reject the conclusion that Attorney Goluba violated SCR 20:8.4(c) as alleged in Count 1 because the referee found Attorney Goluba lacked actual knowledge of the misappropriation when he made the representations at issue to the court.

¶59 Thus, we agree with the referee's conclusions that Attorney Goluba violated SCR 20:1.15(b)(1) as alleged in Count 1; Count 2 should be dismissed because the OLR failed to demonstrate Attorney Goluba violated SCR 20:8.4(c) regarding his interactions with R.L.; Attorney Goluba violated SCRs 22.03(2) and 22.03(6), enforceable via SCR 20:8.4(h), by failing to cooperate in the investigation of the W.S. Estate matter, as alleged in Count 3; Attorney Goluba violated SCR 20:1.3 when he

engaged in practice reflecting a lack of diligence in the S.R. matter as alleged in Count 4; Attorney Goluba violated SCR 20:1.4(a)(4) when he failed to communicate in the S.R. matter as alleged in Count 5; the allegation in Count 6 should be dismissed because the OLR did not prove that Attorney Goluba failed to return client property in the S.R. matter; and Attorney Goluba violated SCR 22.03(2), enforceable via SCR 20:8.4(h), when he failed to cooperate in the OLR's investigation regarding the S.R. matter as alleged in Count 7. We also dismiss the misrepresentation claim alleged in Count 1.

¶60 We consider the appropriate discipline for Attorney Goluba's misconduct.  The referee recommended restitution as follows:  $145 to client S.R. for fees incurred when Attorney Goluba failed to complete the transfer of her vehicle titles; $30,000 to reimburse the Fund for monies paid to R.L.; and $2,655 in legal fees incurred by The Salvation Army to recover their bequest.  No party has objected to these recommendations, they seem wholly reasonable, and we accept them.

¶61 The referee also recommends that Attorney Goluba, prior to reinstatement, take a trust account management seminar within one year, successfully complete its requirements, and furnish quarterly reports to the OLR of activities in his trust account for a period of two years after resuming practice, including furnishing any and all trust, fiduciary and/or business account records requested by the OLR.  No party has objected to these recommendations, they seem wholly reasonable, and we accept them.

¶62 We reject the OLR's request for revocation. Attorney Goluba has, indeed, committed serious misconduct that warrants suspension of his license. However, the referee decisively rejected the OLR's assertion that Attorney Goluba had ongoing knowledge of the misappropriation of funds or that he manipulated R.L. into writing him a check to cover that misappropriation. Upon learning of the misappropriation, Attorney Goluba promptly took steps to ensure The Salvation Army was paid. His mother-in-law, R.L., has disavowed any claim that she was manipulated into paying Attorney Goluba. Accordingly, the most serious ethical charges against Attorney Goluba fail.

¶63 We have considered the decisions cited by the OLR concerning trust account misappropriation by attorneys. See, e.g., In re Disciplinary Proceedings Against Gedlen, 2007 WI 121, 305 Wis. 2d 34, 739 N.W.2d 274; In re Disciplinary Proceedings Against Sheehan, 2007 WI 3, 298 Wis. 2d 317, 725 N.W.2d 627; In re Disciplinary Proceedings Against Ham, 2006 WI 30, 289 Wis. 2d 359, 711 N.W.2d 649; and In re Disciplinary Proceedings Against O'Byrne, 2002 WI 123, 257 Wis. 2d 8, 653 N.W.2d 111.

¶64 As the referee observed, however, in these cases the attorneys knowingly committed the misappropriation. We respect, as we must, the referee's reasoned decision to rely on his credibility determinations over the record evidence submitted by the OLR.

¶65 We consider the cases cited by the referee more helpful in ascertaining the appropriate discipline. See, e.g.,

24

*In re Disciplinary Proceedings Against Brandt*, 2009 WI 43, 317 Wis. 2d 266, 766 N.W.2d 194 (imposing public reprimand on attorney whose legal secretary embezzled money from several of the attorney's accounts, including his trust account, noting the attorney admitted that he failed to make reasonable efforts to ensure that his secretary's conduct was compatible with the obligations of attorneys as required by SCR 20:5.3); *In re Disciplinary Proceedings Against Guenther*, 2005 WI 133, 285 Wis. 2d 587, 700 N.W.2d 260 (imposing six-month suspension on attorney who violated trust account rules because of his failure to keep appropriate trust account records); *In re Disciplinary Proceedings Against Usow*, 214 Wis. 2d 596, 571 N.W.2d 162 (1997) (imposing a six-month suspension on an attorney charged with misrepresentation and trust account violations that were found to be committed without intent and due to a failure to properly supervise his office staff).

¶66 Attorney Goluba's failure to pay attention to his trust account and financial situation was serious. He failed to adequately supervise his office and his lack of oversight facilitated a misappropriation of $30,000 from a charitable organization. We agree with the referee that a six-month suspension is appropriate discipline, and we note that a suspension of this length will require him to undergo a formal reinstatement proceeding before he will be eligible to practice law again.

¶67 We turn next to the issue of costs. The OLR seeks full costs which total $45,676.36 as of July 9, 2012. Attorney

25

Goluba filed a timely objection requesting a reduction in the costs.

¶68 Assessment of costs in OLR matters is governed by SCR 22.24(1m). Our general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of counsel for the OLR, upon the respondent. In cases involving extraordinary circumstances the court may, in the exercise of its discretion, reduce the amount of costs upon a respondent. SCR 22.24(1m). In making this determination we consider the submissions of the parties and all of the following factors:

> (a) The number of counts charged, contested, and proven.

> (b) The nature of the misconduct.

> (c) The level of discipline sought by the parties and recommended by the referee.

> (d) The respondent's cooperation with the disciplinary process.

> (e) Prior discipline, if any.

> (f) Other relevant circumstances.

SCR 22.24(1m)(a)-(f).

¶69 We conclude, after careful consideration, that there are aspects of this litigation that warrant reduction of costs. The complaint alleged seven counts of misconduct (encompassing eight potential rule violations) and sought revocation of Attorney Goluba's license to practice law. The referee ultimately concluded, and we agree, that Attorney Goluba

26

committed five of the eight charged ethical violations resulting in a six-month suspension.

¶70 The referee explicitly noted that the misconduct pertaining to S.R. warranted a reprimand. Attorney Goluba was exonerated on the most serious allegations involving fraud, deceit, or misrepresentation. Attorney Goluba has practiced law for over 20 years with no prior disciplinary history. See SCR 22.24(1m)(c).

¶71 Admittedly, Attorney Goluba failed to cooperate with the OLR early in the investigation; however, it appears he was cooperative during the proceedings before the referee.

¶72 Our review of the costs incurred in this proceeding indicates that most of the costs are counsel, referee, and court reporter fees reflecting the length of the evidentiary proceeding, including production of voluminous banking records. Attorney Goluba argues that most of these costs were incurred in the OLR's unsuccessful attempt to prove he had ongoing knowledge and involvement in the misappropriation of funds. He questions the fairness of this when he admitted the misappropriation occurred from the beginning and was ultimately exonerated by the referee on the question of his knowing involvement in the misappropriation.

¶73 On balance we agree with Attorney Goluba. Although we do not reduce costs based solely on the fact that a lawyer prevailed on certain charges, here, the OLR opted to engage in a thorough, time-consuming, and ultimately very expensive endeavor to convince the referee of Attorney Goluba's ongoing knowledge

27

of and involvement with the misappropriation of client funds. This effort was unsuccessful. The referee found:

> [T]here is absolutely no evidence that Goluba ordered the misappropriation of funds. There is only inferential evidence (and certainly not evidence that rises to the standard of clear, satisfactory and convincing) that Goluba knew the conduct was going on and ratified it . . . . [T]here is no evidence that Goluba knew of the misappropriation at a time when its consequences could be avoided or mitigated but failed to take reasonable remedial action.

Indeed, the referee found that "there is no evidence anywhere in the record that Goluba actually knew the misappropriations were taking place until immediately after the conference with Judge Dyer on January 19, 2007."

¶74 In view of this outcome, we decline to impose the entire costs of this expensive effort on Attorney Goluba, a solo practitioner with no prior discipline. On consideration of the facts and the record, we impose one-half of the costs of this proceeding. Our determination is not the result of the application of a precise mathematical formula, but is based on our thorough consideration of the record, the manner in which this case developed, and the factors set forth in SCR 22.24(1m). We note, further, that Attorney Goluba's allegations of financial hardship are an appropriate consideration for establishment of a payment plan with the OLR.

28

¶75   IT IS ORDERED that the license of David A. Goluba to practice law in Wisconsin is suspended for a period of six months, effective the date of this order.[12]

¶76   IT IS FURTHER ORDERED that, if he has not already done so, Attorney David A. Goluba shall comply with the requirements of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶77   IT IS FURTHER ORDERED that prior to seeking reinstatement of his license to practice law, David A. Goluba shall take a trust account management seminar, successfully complete its requirements, and furnish quarterly reports to the Office of Lawyer Regulation of activities in his trust account for a period of two years after resuming practice, including furnishing any and all trust, fiduciary and/or business account records requested by the Office of Lawyer Regulation.

¶78   IT IS FURTHER ORDERED that within 60 days of the date of this order David A. Goluba shall pay restitution as follows: (1) $30,000 plus legal interest to the Wisconsin Lawyers' Fund for Client Protection; (2) $2,655 to The Salvation Army; and (3) $145 to client S.R.

---

[12] Attorney Goluba is reminded that his license to practice law remains administratively suspended.  Before Attorney Goluba may practice law in Wisconsin, he must provide evidence to this court that he has satisfied his obligations relating to trust account certification and bar dues, assessments, and fees, or demonstrated that he has obtained a waiver from the State Bar of Wisconsin.  See SCR 22.28(1).

¶79  IT IS FURTHER ORDERED that within 60 days of the date of this order, David A. Goluba shall pay to the Office of Lawyer Regulation one-half of the costs of this proceeding, which total $45,676.36 as of July 9, 2012.

¶80  IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶81  IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement.  See SCR 22.29(4)(c).

1