# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP843-CR |
| COMPLETE TITLE: | State of Wisconsin, <br>            Plaintiff-Respondent-Petitioner, <br>      v. <br> Danny Robert Alexander, <br>            Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 352 Wis. 2d 755, 843 N.W.2d 711)
(Ct. App. 2014 – Unpublished)

| | |
|---|---|
| OPINION FILED: | January 27, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 7, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Jeffrey A. Wagner |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, C.J., BRADLEY, J., concur. (Opinion filed.) <br> PROSSER, J., concurs. (Opinion filed.) <br> GABLEMAN, J., concurs. (Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-appellant, there was a brief by *Matthew S. Pinix* and Law Office of *Matthew S. Pinix*, Milwaukee, and oral argument by *Matthew S. Pinix*.

**2015 WI 6**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP843-CR
(L.C. No. 12CF202)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

      Plaintiff-Respondent-Petitioner,

  v.

Danny Robert Alexander,

      Defendant-Appellant.

**FILED**

**JAN 27, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] that granted resentencing based on ineffective assistance of counsel, which reversed the circuit court's[2] denial of Danny Robert Alexander's motion for resentencing. Alexander contends his Fifth Amendment right not to be sentenced based on an improper factor was violated at sentencing because compelled, self-incriminating statements to

---

[1] State v. Alexander, No. 2013AP843-CR, unpublished slip op. (Wis. Ct. App. Jan. 28, 2014).

[2] The Honorable Jeffrey A. Wagner of Milwaukee County presided.

his probation agent were appended to the report of the presentence investigation (PSI) the circuit court reviewed. The State does not contest Alexander's assertion that his statements to his probation agent were compelled; therefore, in this decision, we assume, without deciding, that they were compelled. In order to establish circuit court error, Alexander must prove the circuit court actually relied on his compelled statements. Accordingly, our review focuses on whether the circuit court actually relied on Alexander's compelled statements to his probation agent when the court sentenced him. See State v. Harris (Landray M.), 2010 WI 79, ¶30, 326 Wis. 2d 685, 786 N.W.2d 409.

¶2 We conclude that Alexander failed to prove by clear and convincing evidence that the circuit court erroneously exercised its discretion by actually relying on Alexander's compelled, incriminating statements in imposing sentence. Therefore, we conclude that Alexander was not prejudiced by his counsel's lack of objection to those same statements. Accordingly, it follows that Alexander was not denied effective assistance of counsel. We reverse the decision of the court of appeals and affirm the circuit court's denial of Alexander's motion for resentencing.

## I. BACKGROUND

¶3 This case arises from the circuit court's sentencing where compelled, incriminating statements that Alexander made to his probation agent were appended to the PSI. Alexander moved for resentencing alleging a violation of his Fifth Amendment

right against compelled self-incrimination, which the circuit court denied. We must decide whether the circuit court erroneously exercised its discretion at sentencing by actually relying upon Alexander's compelled statements.

¶4 On January 13, 2012, Alexander was charged with one count of felony forgery. The complaint alleged that Alexander presented two forged checks for payment at two U.S. Bank locations: one for $1,749.13 and one for $1,456.23.[3] The checks were drawn on the same Silver Mill Management Co. bank account. U.S. Bank gave Alexander cash for the checks. Alexander cashed the forged checks while he was on extended supervision for an earlier conviction.

¶5 Alexander pled guilty to felony forgery. The circuit court accepted Alexander's plea and ordered a PSI. The circuit court received the PSI before the sentencing hearing. The PSI included a description of the offense, a victim statement, an examination of Alexander's prior record and correctional experience, a personal history, and the recommendation of the Department of Corrections (DOC) agent who prepared the PSI. The recommendation noted that Alexander committed the forgery offense while on extended supervision, just over a month after he was released from prison. The agent characterized

---

[3] This figure reflects an error in the complaint. The copy of this check attached to the complaint shows the amount of $1,461.23.

3

Alexander's offenses as brazen and said Alexander exhibited a willingness to commit illegal activities.

¶6 The PSI victim statement quoted a fraud investigator with U.S. Bank: "Well here, we [U.S. Bank] have a total loss of $12,000 from Danny and his accomplices. And that's just us; there are other victims here and other pending cases." In the PSI author's recommendation for restitution, a $12,000 loss due to offenses committed by Alexander and his codefendants was again noted.[4]

¶7 Appended to the PSI report were two of Alexander's statements to his extended supervision agent.[5] In the statements, Alexander described cashing three checks from Dave's Machine Repair and two from Silver Mill, which are the checks from which this conviction arose. In his plea, Alexander

---

[4] U.S. Bank also completed a Crime Victim Impact Statement stating "U.S. Bank suffered a financial loss of $9,626.50 due to counterfeit checks cashed against Silver Mills Management LLC [sic]. Danny Alexander cashed two of them for $3,210.36."

[5] The DOC-1305/1305A forms, upon which the DOC agent recorded Alexander's statements, each contain a header stating:

> I have been advised that I must account in a truthful and accurate manner for my whereabouts and activities, and that failure to do so is a violation for which I could be revoked. I have also been advised that none of this information can be used against me in criminal proceedings.

The header was followed by "I have read or have had read to me, the above warning," which Alexander initialed. Alexander signed the statement and initialed each page.

admitted to the facts in the complaint that described cashing the Silver Mill checks and the dollar amount of each check.

¶8  At Alexander's sentencing hearing, the PSI report was discussed:

> THE COURT:  Counsel . . . is here for sentencing. Have you gone over the pre-sentence report with your client?  If you have, are there any additions or corrections to it?
>
> [ATTORNEY] JOHNSON:  Yes.  You saw the pre-sentence, right?
>
> [ALEXANDER]:  They didn't come and see me.
>
> . . . .
>
> THE COURT:  Okay.  But you looked——You have read this report, right?
>
> [ALEXANDER]:  Yes.
>
> THE COURT:  Okay.  Any additions or corrections by the state?
>
> [THE STATE]:  No.
>
> THE COURT:  So then we are ready to proceed, [Attorney] Johnson?
>
> [ATTORNEY] JOHNSON:  Yes.

¶9  After hearing the parties' recommendations, the court stated:

> Well, it appears based upon the U.S. Bank that these checks were from Silver [Mill] Management Company and in their statement, at least their investigator said that there were several individuals that were involved in fraudulent activities, involved in area businesses.
>
> I don't know whether or not you were one of those individuals, but apparently you did so in this case before the court.  Your prior record——Before the court

5

imposes a sentence the court takes into consideration the nature of the offense and what's been represented as to your character and the rights of the victim and the rights of the community that you present. A punishment aspect as an objective of sentencing and a rehabilitative aspect and a deterrent aspect.

It would appear that you haven't really been deterred from further criminal activity even though this may have been what was set as a crime of opportunity because every time, you know . . . there is a continued pattern of behavior that you have been on probation. That was revoked. You ended up in prison and then there was an armed robbery in '94 where you had 96 months in prison. And then there was a reckless second degree recklessly endangering safety that you received prison for.

. . . .

Quite frankly, it says as far as the assessment of yourself by the agent is that you were on your second chance of extended supervision and only been out of prison for just over a month when you committed the present offenses. That [he has] been a repeat offender for the majority of his adult life and has several convictions.

And it goes on to say that within those dispositions in the past he was afforded opportunities at treatment, skills and education, however the defendant has not truly made himself [amenable] to Correctional intervention that will motivate him to redirect the direction of his life. Then [the PSI author goes on to] recommend the sentence that they do.

¶10 The court after hearing the recommendations of the district attorney and Alexander's counsel sentenced Alexander:

What the court will do, the court is going to follow the recommendation of the pre-sentence to some extent, and impose a sentence of seven years in the

6

Wisconsin state prison system.[6] The court will make that concurrent to whatever time that you're serving now.

The court believes that you have to have some extra time on this because of the fact . . . of your continuous undesirable behavior patterns.

The court waived all costs but imposed the restitution amount, $3,210.32,[7] to which Alexander had agreed.

¶11 Alexander moved for resentencing. Alexander argued that his Fifth Amendment privilege against self-incrimination was violated by the circuit court's reliance on the PSI with the appended statements he made to his probation agent. Alexander argued that his statements were compelled because conditions of his extended supervision required truthful reporting of his activities.[8]

¶12 The circuit court denied Alexander's motion for resentencing. The court noted that Alexander agreed during sentencing that he had read the PSI. Regarding the information contained in Alexander's compelled statements, the court said that when Alexander pled guilty he admitted the facts in the

---

[6] The circuit court initially ordered three years of confinement and four years of extended supervision. When advised that the extended supervision could not exceed three years, the court corrected the sentence to six years imprisonment, consisting of three years confinement and three years extended supervision.

[7] This figure was taken from the circuit court's order even though it is not the sum of the two checks attached to the complaint.

[8] As we have noted above, we assume without deciding that Alexander's statements were compelled.

complaint were true.[9] The court also explained that while Alexander's statements referred to other forged and cashed checks in separate incidents, "the body of the [PSI] report also refers to an amount of loss suffered by the victim much greater than the $3,210.32" for the checks on which his conviction was based. The court noted that the "Crime Victim Impact Statement also referenced a $9,626.50 loss by U.S. Bank from these transactions, indicating that the defendant had cashed two of the checks." The court concluded:

> Clearly, the court and the parties were aware of the bigger picture of what had been going on, and the defendant's statement to his [probation] agent did not reveal anything not already known to the court.

¶13 Alexander appealed the circuit court's denial of his motion for resentencing. Alexander argued on appeal that the circuit court erred in denying his motion for resentencing due to the violation of his Fifth Amendment right against self-incrimination that he alleged had occurred. The court of appeals reversed the circuit court based on ineffective assistance of counsel, which the court of appeals raised *sua sponte*, and remanded for a new sentencing hearing. State v. Alexander, No. 2013AP843-CR, unpublished slip op., ¶¶12-15 (Wis. Ct. App. Jan. 28, 2014).

---

[9] During his guilty plea, Alexander acknowledged his understanding of the circuit court's statement: "You would be waiving any possible defenses that you may have to the offense charged in the criminal complaint." The court also explained that it would use the complaint as the factual basis for Alexander's plea.

8

¶14 We granted review, and now reverse the decision of the court of appeals.

## II. DISCUSSION

### A. Standard of Review

¶15 We review the court of appeals' conclusion that Alexander was denied effective assistance of counsel in the context of the circuit court's review of the PSI report at sentencing. Whether counsel was ineffective in failing to object to the PSI report because it appended compelled, self-incriminating statements and whether the defendant was prejudiced by counsel's failure, present mixed questions of fact and law. State v. Johnson, 2004 WI 94, ¶10, 273 Wis. 2d 626, 681 N.W.2d 901. We uphold a circuit court's factual findings unless they are clearly erroneous. Id. However, whether counsel's performance was deficient and whether a defendant was prejudiced thereby, present questions of law that we review independently. Id.

¶16 On review, we will affirm the sentencing decision of a circuit court so long as the court does not erroneously exercise its discretion. Harris (Landray M.), 326 Wis. 2d 685, ¶3; State v. Brown, 2006 WI 131, ¶5, 298 Wis. 2d 37, 725 N.W.2d 262.

### B. Sentencing Decision

¶17 A circuit court erroneously exercises its sentencing discretion when it "actually relies on clearly irrelevant or improper factors." Harris (Landray M.), 326 Wis. 2d 685, ¶66. A defendant bears the burden of proving, by clear and convincing evidence, that the sentencing court actually relied on

9

irrelevant or improper factors.  Id.; see State v. Tiepelman, 2006 WI 66, ¶26, 291 Wis. 2d 179, 717 N.W.2d 1 (concluding that a defendant who asserts that the circuit court erred by employing inaccurate information at sentencing must show that: (1) the information was inaccurate, and (2) the circuit court actually relied on the inaccurate information); see McCleary v. State, 49 Wis. 2d 263, 278, 182 N.W.2d 512 (1971) (concluding where the sentencing discretion was exercised on the basis of clearly irrelevant or improper factors, an erroneous exercise of discretion occurs[10]).  Before the court of appeals, Alexander claimed that the circuit court erred in denying his motion for resentencing because the circuit court based his sentence on the PSI that improperly appended a compelled statement.

¶18 The two-step framework to determine whether a circuit court erroneously exercised its sentencing discretion based on an improper factor that we set out in Tiepelman is helpful here. Tiepelman, 291 Wis. 2d 179, ¶26.  In Tiepelman, we noted that "[a] defendant has a constitutionally protected due process right to be sentenced [on] accurate information." Id., ¶9.  We discussed the two-step framework wherein a defendant must prove that:  (1) information was inaccurate, and (2) the court actually relied on the inaccurate information in the sentencing. Id., ¶26.  If the defendant proves inaccuracy and actual

---

[10] McCleary v. State, 49 Wis. 2d 263, 278, 182 N.W.2d 512 (1971), employed the term "abuse of discretion," a term we no longer employ.  We now employ the term "erroneous exercise of discretion."

10

reliance, the burden shifts to the State to prove the error was harmless. Id., ¶¶26-27.

¶19 In Harris (Landray M.), we also applied this framework to a contention that a sentencing court had relied on improper factors, rather than inaccurate information. Harris (Landray M.), 326 Wis. 2d 685, ¶24. We concluded that race and gender, the two factors under examination in Harris (Landray M.), were improper sentencing factors. Id., ¶33. We recognized a defendant's due process right not to be sentenced on the basis of race and held that a defendant also has a due process right not to be sentenced based on gender. Id.

¶20 We discussed the difficulty in proving that a sentencing court actually relied on improper factors. Id., ¶34. However, we concluded that requiring a defendant to prove his case "'promotes the policy of finality of judgments and satisfies the purpose of sentence modification, which is the correction of unjust sentences.'" Id. (quoting State v. Littrup, 164 Wis. 2d 120, 132, 473 N.W.2d 164 (Ct. App. 1991)).

¶21 Harris (Landray M.) explained how the two-part Tiepelman test applied to an "improper factor," as compared with "inaccurate information." Id., ¶32. "Proving inaccurate information is a threshold question——you cannot show actual reliance on inaccurate information if the information is accurate. When the question relates to other improper factors like race and gender, only the second part of the test, actual reliance, is relevant." Id., ¶33 n.10.

11

## 1. Improper factor

¶22 We first consider whether compelled statements are an improper factor to rely on at sentencing. When sentencing a defendant, a circuit court should use three primary factors: the gravity of the offense, the character of the offender, and the need to protect the public. State v. Harris (Denia), 119 Wis. 2d 612, 623, 350 N.W.2d 633 (1984) (citing McCleary, 49 Wis. 2d at 274-76). The circuit court may also consider additional factors, including:

> (1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention.

Id. at 623-24 (quoting Harris (Robert Lee) v. State, 75 Wis. 2d 513, 519-20, 250 N.W.2d 7 (1977)). The circuit court's proper exercise of discretion includes individualizing the sentence "to the defendant based on the facts of the case" and may include "identifying the most relevant factors and explaining how the sentence imposed furthers the sentencing objectives." Harris (Landray M.), 326 Wis. 2d 685, ¶29 (citing State v. Gallion, 2004 WI 42, ¶¶39-48, 270 Wis. 2d 535, 678 N.W.2d 197).

¶23 We have already decided that certain factors are improper for the circuit court to consider at sentencing and therefore violate a defendant's right to due process: race or

national origin,[11] gender,[12] alleged extra-jurisdictional offenses,[13] and the defendant's or victim's religion.[14]

¶24 Alexander has a Fifth Amendment right not to be compelled to be a witness against himself.[15] Rock v. Arkansas, 483 U.S. 44, 51-53 (1987). The Fourteenth Amendment requires that states afford the protections of the Fifth Amendment to defendants in state criminal actions. State v. Lonkoski, 2013 WI 30, ¶23 n.8, 346 Wis. 2d 523, 828 N.W.2d 552 (citing Malloy v. Hogan, 378 U.S. 1, 6 (1964)). The Fifth Amendment privilege against self-incrimination continues after a plea and through sentencing. State v. McConnohie, 121 Wis. 2d 57, 68, 358 N.W.2d 256 (1984) (concluding that where a defendant has pleaded guilty to a criminal charge but has not yet been sentenced, he retains his constitutional privilege against compelled self-incrimination). Accordingly, a circuit court employs an improper factor in sentencing if it actually relies on compelled statements made to a probation agent.

---

[11] State v. Harris (Landray M.), 2010 WI 79, ¶33 n.9, 326 Wis. 2d 685, 786 N.W.2d 409 (citing United States v. Munoz, 974 F.2d 493, 495 (4th Cir. 1992)).

[12] Id., ¶33.

[13] Rosado v. State, 70 Wis. 2d 280, 290-91, 234 N.W.2d 69 (1975).

[14] State v. Ninham, 2011 WI 33, ¶96, 333 Wis. 2d 335, 797 N.W.2d 451.

[15] The Fifth Amendment to the United States Constitution states in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself."

13

## 2. Actual reliance

¶25 The second part of our inquiry is to determine whether the circuit court actually relied on an improper factor in sentencing Alexander, i.e., Alexander's compelled statements. A circuit court "must articulate the basis for the sentence imposed." Harris (Denia), 119 Wis. 2d at 623. This articulation plays an important role in determining whether the circuit court actually relied on an improper factor. We review the circuit court's articulation of its basis for sentencing in the context of the entire sentencing transcript to determine whether the court gave "explicit attention" to an improper factor, and whether the improper factor "formed part of the basis for the sentence."[16] Tiepelman, 291 Wis. 2d 179, ¶14; State v. Travis, 2013 WI 38, ¶¶28, 31, 347 Wis. 2d 142, 832 N.W.2d 491.

¶26 We have evaluated whether a circuit court actually relied on an inaccuracy or an improper factor in many cases. In some cases where we have concluded there was no actual reliance, the circuit court has made comments that allegedly constituted explicit attention to an improper factor. State v. Lechner, 217

---

[16] Though State v. Tiepelman, 2006 WI 66, 291 Wis. 2d 179, 717 N.W.2d 1, provides this method for determining actual reliance, we look to other cases for its application because Tiepelman is based in part on the parties' stipulation and therefore did not apply this method. Id., ¶4 n.3.

14

Wis. 2d 392, 419-22, 576 N.W.2d 912 (1998)[17] (stating that although the circuit court explicitly referred to an inaccurate number of prior convictions when considering the character of the defendant, it did so to recognize defendant's long history of drug and alcohol abuse); Harris (Landray M.), 326 Wis. 2d 685, ¶¶45, 48-52 (reviewing comments by the circuit court allegedly constituting "explicit attention"). However, we reviewed the circuit court's comments in the context of the whole sentencing transcript and concluded that the court actually based its sentence on proper, rather than improper, factors. Lechner, 217 Wis. 2d at 421-22 (stating that the circuit court considered the alleged convictions as "warning signals," focusing on the underlying factual events rather than actual convictions); see Harris (Landray M.), 326 Wis. 2d 685, ¶¶52, 60, 64 (reviewing the circuit court's use of the term, "baby mama" in the context of the whole sentencing transcript and concluding that the defendant failed to prove the court actually relied on race or gender in sentencing him).

¶27 In cases concluding that the circuit court actually relied on inaccurate information or improper factors, the circuit court explicitly considered the inaccurate information

---

[17] After receiving no relief in state court, the defendant in Lechner v. Frank, 341 F.3d 635 (7th Cir. 2003), filed a habeas petition. On appeal, the Seventh Circuit agreed with our conclusion that the record did not demonstrate that the circuit court based its sentence in part on an inaccurate prior conviction history. Id. at 639-40.

15

and also would not have sentenced the defendant in the same manner without the inaccurate information. For example, in Travis, we noted that the circuit court explicitly and repetitively referred to the inaccurate penalty information. Travis, 347 Wis. 2d 142, ¶¶32-33. The circuit court also explained that if it were to impose a sentence, it had an obligation to impose the minimum sentence, which was inaccurately stated. Id., ¶34.

¶28 In State v. Anderson, 222 Wis. 2d 403, 588 N.W.2d 75 (Ct. App. 1998), the defendant contended that the circuit court had relied on a portion of the PSI that included allegations of sexual assault that were later recanted. Id. at 409-10. The court of appeals held that the circuit court relied on that portion of the PSI. Id. at 410. In regard to reliance, the court of appeals stated: "The tenor of the trial court's sentencing remarks is inconsistent with the facts of the offenses to which [the defendant] pled no contest," implying that the inaccurate allegations formed part of the court's basis for the sentence. Id.; see also United States v. Tucker, 404 U.S. 443, 447 (1972) (concluding that the sentencing transcript demonstrated the district court gave explicit consideration to the inaccurate number of previous convictions, and also actually relied on inaccurate information).

¶29 When a sentencing challenge is grounded in the use of allegedly erroneous information, we look to the circuit court's articulation of its basis for imposing the sentence. Harris (Denia), 119 Wis. 2d at 623. In the context of the whole

16

sentencing transcript, we examine first whether the court gave explicit attention to the allegedly improper factor and second, whether the improper factor "formed part of the basis for the sentence," which could show actual reliance. See Harris (Landray M.), 326 Wis. 2d 685, ¶¶53, 60, 64; Tiepelman, 291 Wis. 2d 179, ¶14.

### 3. Application

¶30 As we explained above, Alexander has the burden to prove by clear and convincing evidence that the circuit court actually relied on an improper factor in imposing sentence. Compelled, incriminating statements are an improper factor in determining a defendant's sentence because their use would violate the defendant's Fifth Amendment right against self-incrimination. Rock, 483 U.S. at 51-53; Lonkoski, 346 Wis. 2d 523, ¶23 & n.8. Therefore, the remaining question before us is whether the circuit court actually relied on Alexander's compelled statements that were appended to the PSI.[18] Accordingly, we review the entire sentencing transcript to see whether the circuit court gave explicit attention to the compelled statements. Harris (Landray M.), 326 Wis. 2d 685, ¶45. We also review whether the compelled, incriminating statements "formed part of the basis for the sentence," which could indicate that the circuit court actually relied on the

---

[18] "When the question relates to other improper factors like race and gender, only the second part of the test, actual reliance, is relevant." Harris (Landray M.), 326 Wis. 2d 685, ¶32 n.10.

17

compelled statements. <u>Tiepelman</u>, 291 Wis. 2d 179, ¶14; <u>Travis</u>, 347 Wis. 2d 142, ¶¶28, 31. We also review the court's statements made in response to Alexander's motion for resentencing. <u>Harris (Landray M.)</u>, 326 Wis. 2d 685, ¶49.

¶31 In his compelled statements, Alexander admitted his role in the Silver Mill forgeries and in other forgeries not involved herein. At sentencing, the circuit court referred to information that could be found in Alexander's compelled statement. However, viewed in context, the circuit court actually based its reference to this information on the PSI victim statement and the Crime Victim Impact Statement of U.S. Bank's senior fraud investigator.[19] The circuit court stated:

> Well, it appears based upon the U.S. Bank that these checks were from Silver [Mill] Management Company and in their statement, at least their investigator said that there were several individuals that were involved in fraudulent activities, involved in area businesses.
>
> I don't know whether or not you were one of those individuals, but apparently you did so in this case before the court.

By referring to the fraud investigator's statement, the circuit court identified that the source for its reference to other offenses was the U.S. Bank investigator. Additionally, when the court related that it did not know whether Alexander was one of

---

[19] It was proper for the circuit court to consider the PSI victim statement and the Crime Victim Impact Statement, even though Alexander's involvement in other forgeries had not been proven. <u>Elias v. State</u>, 93 Wis. 2d 278, 284, 286 N.W.2d 559 (1980).

the individuals involved in the other forgeries, the court confirmed that the source of its information was not Alexander's compelled statements where his involvement was admitted.

¶32 At Alexander's sentencing, the circuit court discussed other proper sentencing factors, including the nature of the offense, Alexander's record of past criminal convictions, Alexander's undesirable behavior pattern, and his character in failing to accept correctional intervention. See Harris (Denia), 119 Wis. 2d at 623-24. The circuit court stated that it was "going to follow the recommendation of the pre-sentence to some extent." The PSI recommended a term of three to four years of initial confinement followed by a three year term of extended supervision. The circuit court sentenced Alexander to three years initial confinement, consistent with the PSI's recommendation, and ultimately three years of extended supervision.[20]

¶33 The sentencing transcript clearly reflects that the basis of Alexander's sentence overall was Alexander's history of criminal offenses and his failure to correct his behavior. Alexander's history was the focus of the court's discussion, including the court's response to Alexander's comments. The sentencing transcript reveals that the circuit court did not give explicit attention to Alexander's compelled statements, and information from those statements did not form part of the basis

---

[20] See note 6 above.

for the sentence imposed. See Tiepelman, 291 Wis. 2d 179, ¶14; Travis, 347 Wis. 2d 142, ¶¶28, 31. Therefore, the circuit court did not actually rely on an improper factor in sentencing Alexander, and did not erroneously exercise its discretion. See Tiepelman, 291 Wis. 2d 179, ¶26.

¶34 Our conclusion, based on our review of the entire sentencing transcript, is supported by the circuit court's order denying Alexander's motion for resentencing. The circuit court explained that "the court and the parties were aware of the bigger picture of what had been going on, and the defendant's statement to his agent did not reveal anything not already known to the court." The court noted alternative sources for the information included in Alexander's compelled statements. First, the court noted that Alexander admitted to the Silver Mills forgeries when he entered his guilty plea. Second, the court explained that the body of the PSI referred to an amount of loss suffered by U.S. Bank greater than the sum of the Silver Mills checks that were the basis for Alexander's conviction. In that regard, the court referred to a U.S. Bank senior fraud investigator's statement in the Crime Victim Impact Statement section of the PSI. The investigator placed the amount of loss from "Danny and his accomplices" at $12,000, while Alexander was convicted of check forgeries totaling $3,210.32. The circuit court explained that given the additional sources in the PSI indicating Alexander's potential involvement in other forgeries, the attachment of Alexander's compelled statements that also spoke of additional forgeries, did not affect the sentence it

20

imposed. The court termed the attachment, "harmless at best." Third, the circuit court's order denying Alexander's motion for resentencing reiterated that the court did not actually rely on Alexander's compelled statements in sentencing him.

¶35 In sum, after reviewing the sentencing transcript as a whole and the court's comments in denying Alexander's motion for resentencing, we conclude that the circuit court relied on proper factors in imposing sentence and did not actually rely on Alexander's compelled statements. The circuit court considered the nature of the offense, Alexander's record of past criminal convictions, Alexander's undesirable behavior pattern, and his repeated failures to accept correctional intervention. The circuit court explained its basis for imposing Alexander's sentence, both at sentencing and in its order denying Alexander's motion for resentencing. We conclude there is nothing to indicate that the circuit court's sentence was an erroneous exercise of discretion.

## C. Ineffective Assistance of Counsel

¶36 As we noted at the beginning of this decision, the court of appeals ordered resentencing based on its conclusion that Alexander was denied effective assistance of counsel. Alexander, No. 2013AP843-CR, unpublished slip op., ¶¶12-15. In order to prevail on an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. Johnson, 273 Wis. 2d 626, ¶11.

¶37 When a claim of ineffective assistance of counsel is made, the circuit court often holds a <u>Machner</u> hearing.[21] <u>State v. Allen</u>, 2004 WI 106, ¶8 n.3, 274 Wis. 2d 568, 682 N.W.2d 433. The circuit court did not hold a <u>Machner</u> hearing in this case because the court of appeals raised the ineffective assistance of counsel issue *sua sponte*. <u>Alexander</u>, No. 2013AP843-CR, unpublished slip op., ¶¶12-15. Therefore, we do not have a record describing why counsel did not object to the compelled statements appended to the PSI.

¶38 However, because proof of prejudice is intertwined with whether the circuit court actually relied on Alexander's compelled statements when sentencing him and because we have a full record to review on sentencing, we are not hampered by the lack of a <u>Machner</u> hearing record.[22]

¶39 Furthermore, if Alexander was not prejudiced by counsel's lack of an objection, we need not decide whether counsel's performance was deficient in not objecting to Alexander's compelled statements appended to the PSI. <u>Johnson</u>, 273 Wis. 2d 626, ¶11.

¶40 In the discussion above, we concluded that the circuit court did not actually rely on Alexander's compelled statements when imposing sentence. Accordingly, it follows that Alexander

---

[21] <u>State v. Machner</u>, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

[22] A <u>Machner</u> hearing is not required where the record shows that the defendant cannot establish prejudice. <u>State v. Roberson</u>, 2006 WI 80, ¶44, 292 Wis. 2d 280, 717 N.W.2d 111.

was not prejudiced by his counsel's lack of objection to those same statements. Therefore, it also follows that Alexander cannot prevail on an ineffective assistance of counsel claim.

### III. CONCLUSION

¶41 We conclude that Alexander failed to prove by clear and convincing evidence that the circuit court erroneously exercised its discretion by actually relying on Alexander's compelled, incriminating statements in imposing sentence. Therefore, we conclude that Alexander was not prejudiced by his counsel's lack of objection to those same statements. Accordingly, it follows that Alexander was not denied effective assistance of counsel. We reverse the decision of the court of appeals and affirm the circuit court's denial of Alexander's motion for resentencing.

*By the Court.*—The decision of the court of appeals is reversed.

¶42 SHIRLEY S. ABRAHAMSON, C.J.  *(concurring).*  Compelled statements by the defendant to his extended supervision agent were erroneously appended to the presentence investigation report (PSI) in the instant case.  The defendant moved for resentencing, arguing that the circuit court improperly considered these statements when imposing sentence, violating the defendant's privilege against self-incrimination.

¶43 The circuit court denied the defendant's motion.  The court of appeals granted the defendant resentencing based on ineffective assistance of counsel, an issue it raised sua sponte.

¶44 I agree with the majority opinion that the court of appeals' decision granting the defendant resentencing based on ineffective assistance of counsel should be reversed.  I write to clarify several points of law.

¶45 First, the majority opinion fails to correct errors in the court of appeals' approach to the issue of ineffective assistance of counsel.  Its silence about these errors might imply that it is endorsing the court of appeals' approach.

¶46 The court of appeals erred in concluding that defense counsel's trial performance was deficient.  The court of appeals could not determine whether defense counsel performed deficiently without a Machner hearing.[1]

¶47 Because the court of appeals in the instant case raised the issue of ineffective assistance of counsel sua

_____

[1] See State v. Machner, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

1

sponte, no Machner hearing had been held. A Machner hearing is critical to address the competency of defense counsel and to preserve defense counsel's testimony.[2] Indeed, a Machner hearing "is a prerequisite to a claim of ineffective representation . . . ."[3]

¶48 Thus, the court of appeals should have remanded the cause to the circuit court for a Machner hearing. The court of appeals erred in determining that the defendant received deficient assistance of counsel without first providing defense counsel an opportunity to explain "the reasons underlying his handling of [the] case."[4]

¶49 The majority opinion determines that defense counsel's trial performance was not prejudicial.[5] In contrast to the determination that defense counsel was deficient, the

---

[2] In Machner, 92 Wis. 2d at 804, the court of appeals stated:

> We hold that it is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel. We cannot otherwise determine whether trial counsel's actions were the result of incompetence or deliberate trial strategies. In such situations, then, it is the better rule, and in the client's best interests, to require trial counsel to explain the reasons underlying his handling of a case.

[3] Machner, 92 Wis. 2d at 804.

[4] Id.

[5] After determining that defense counsel's trial performance was deficient, the court of appeals further concluded that the deficiency was prejudicial.

2

determination of prejudice can be made by an appellate court regardless of whether a Machner hearing has been held.[6]

¶50 I do not object to the majority opinion's resolution of the ineffective assistance of counsel issue. Rather, I take issue with the majority opinion's failure to clarify that a Machner hearing is required before an appellate court can determine that defense counsel's performance was deficient. The majority opinion is too cryptic and fails to make the court of appeals' error clear.

¶51 Further, after the court of appeals raised the issue of ineffective assistance of counsel sua sponte (which of course it may do), it failed to allow briefing on the matter. This is particularly problematic considering the court of appeals determined that the issue of ineffective assistance of counsel was dispositive of the case. Moreover, had the parties briefed the issue of defense counsel's competency, the court of appeals may not have erroneously disregarded the Machner requirement.

---

[6] See State v. Roberson, 2006 WI 80, ¶44, 292 Wis. 2d 280, 717 N.W.2d 111 ("Because we conclude that the record sufficiently establishes that Roberson was not prejudiced by his counsel's actions, we further conclude that the circuit court did not err in denying Roberson a hearing on his postconviction motion alleging ineffective assistance of trial counsel in accordance with Machner" (citation omitted).); State v. Rodriguez, 2006 WI App 163, ¶40, 295 Wis. 2d 801, 722 N.W.2d 136 ("A Machner hearing here, however, was not required, because we agree with the trial court, on our de novo review, that Rodriguez has not shown the requisite prejudice."). See also majority op., ¶38 n.22 ("A Machner hearing is not required where the record shows that the defendant cannot establish prejudice.").

¶52 We have previously admonished that before a court acts on its own initiative, it must accord the parties an opportunity to present their positions.[7] (Admittedly, this court frequently fails to follow its own advice in this regard.[8])

¶53 Second, the majority opinion fails to caution that this court generally does not consider dispositive "[a] circuit court's after-the-fact assertion of non-reliance" on an improper factor at sentencing.[9] Rather, "[a] reviewing court must independently review the record of the sentencing hearing to

---

[7] See, e.g., Bartus v. DHSS, 176 Wis. 2d 1063, 1073, 501 N.W.2d 419 (1993) ("We therefore urge the courts to exercise caution when determining an issue sua sponte without the assistance of supplemental briefs and to ask for briefs unless the matter is quite clear."); Cemetery Servs., Inc. v. Wis. Dep't Reg. & Licensing, 221 Wis. 2d 817, 831, 586 N.W.2d 191 (Ct. App. 1998) ("We cannot serve as both advocate and court. For this reason, we generally choose not to decide issues that are not adequately developed by the parties in their briefs."). See also Day v. McDonough, 547 U.S. 198, 210 (2006) ("Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions.").

[8] See, e.g., Maurin v. Hall, 2004 WI 100, ¶¶119-121, 274 Wis. 2d 28, 682 N.W.2d 866 (Abrahamson, C.J. & Crooks, J., concurring), overruled on other grounds by Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, 293 Wis. 2d 38, 717 N.W.2d 216. In Maurin, Justice Crooks and I criticized the majority opinion for deciding the case on the basis of a "novel interpretation of the statutes" without first requesting supplemental briefs or reargument. Maurin, 274 Wis. 2d 28, ¶120 (Abrahamson, C.J. & Crooks, J., concurring). Our concurrence stated: "We are at a loss to understand why the majority refuses to call for additional briefs." Maurin, 274 Wis. 2d 28, ¶121 (Abrahamson, C.J. & Crooks, J., concurring).

[9] See State v. Travis, 2013 WI 38, ¶48, 347 Wis. 2d 142, 832 N.W.2d 491.

determine the existence of any actual reliance on [an improper factor]."[10]

¶54 The majority opinion concludes that the defendant is not entitled to resentencing because he has failed to meet his burden of proving by clear and convincing evidence that the circuit court actually relied on an improper factor when imposing sentence.[11]

---

[10] Travis, 347 Wis. 2d 14, ¶48. The Travis court summarized the court's approach to the question of whether a circuit court relied on inaccurate or improper information at sentencing as follows:

> The standard, as stated in Tiepelman, to determine whether the circuit court "actually relied" on the incorrect information at sentencing is based upon whether the circuit court gave "explicit attention" or "specific consideration" to it, so that the inaccurate information "formed part of the basis for the sentence." A circuit court's "explicit attention to the misinformation demonstrates [the circuit court's] reliance on that misinformation in passing sentence."
>
> "[T]he fact that other information might have justified the sentence, independent of the inaccurate information, is irrelevant when the court has relied on inaccurate information as part of the basis of the sentence."
>
> A reviewing court must independently review the record of the sentencing hearing to determine the existence of any actual reliance on inaccurate information. A circuit court's after-the-fact assertion of non-reliance on allegedly inaccurate information is not dispositive of the issue of actual reliance.

Travis, 347 Wis. 2d 14, ¶¶46-48 (footnotes omitted; alterations & emphasis in original).

[11] See majority op., ¶¶2, 31-35.

¶55 In reaching this conclusion, the majority opinion relies on the circuit court's order, which states that "the court and the parties were aware of the bigger picture of what had been going on, and the defendant's statement to his agent did not reveal anything not already known to the court."[12]

¶56 The circuit court did not say it did not actually rely on the inadmissible information appended to the PSI. Rather, the circuit court declared that it did not need to rely on the defendant's inadmissible statements because it was already aware of the information contained in those statements.

¶57 In any event, a circuit court's after-the-fact assertions are not dispositive. Nevertheless, after an independent review of the sentencing record, I agree with the majority opinion that the defendant has failed to prove the circuit court actually relied on an improper factor.

¶58 Third, the majority opinion fails to explicitly conclude that the statements by the defendant that were erroneously appended to the PSI constitute compelled self-incrimination. The defendant, the State, and the court of appeals correctly state the law: The defendant's statements

---

[12] Majority op., ¶34.

were compelled self-incrimination and were inadmissible against him at sentencing in the present case.[13]

¶59 The majority's unwillingness to acknowledge this clear instance of compelled self-incrimination is mystifying and may have the unintended consequence of raising questions about existing law. As I recently stated in my concurrence in 118th Street Kenosha, LLC v. Wisconsin Department of Transportation, 2014 WI 125, ¶67, ___ Wis. 2d ___, 856 N.W.2d 486 (Abrahamson, C.J., concurring):

> This court is developing the bad habit of assuming applicable legal principles without deciding the legal issues that are presented and briefed. This habit "has the unfortunate effect of ducking [] vital issue[s] that should be decided," "fails to provide adequate guidance to litigants, the circuit courts, and the court of appeals," and flouts this court's "ultimate responsibility for development of the law." (Footnotes omitted.)

¶60 In sum, I take issue with the majority opinion's failure to clarify three points of law: (1) a Machner hearing is required for an appellate court to determine whether defense counsel's performance was deficient; (2) this court does not consider dispositive a circuit court's after-the-fact assertion

---

[13] See State v. Alexander, No. 2013AP843-CR, unpublished slip op., ¶¶9-11 (Wis. Ct. App. Jan. 28, 2014). See also State v. Spaeth, 2012 WI 95, ¶¶55-56, 343 Wis. 2d 220, 819 N.W.2d 769 (stating that Wisconsin courts recognize "the right of the State to compel statements from probationers and the corresponding obligation to provide immunity coextensive with the Fifth Amendment privilege"); State v. Peebles, 2010 WI App 156, ¶19, 330 Wis. 2d 243, 792 N.W.2d 212 ("[I]f a probationer is compelled by way of probation rules to incriminate himself or herself, the resulting statements may not be used in any criminal proceeding.").

of non-reliance on an improper factor at sentencing; and (3) the statements by the defendant that were erroneously appended to the PSI constitute compelled self-incrimination and were inadmissible at sentencing in the present case.

¶61  For the reasons set forth, I write separately.

¶62  I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

¶63 DAVID T. PROSSER, J. *(concurring).* This case involves alleged irregularities in the sentencing of Danny Robert Alexander, Sr. (Alexander).

¶64 Alexander was charged with presenting two forged checks for payment at different U.S. Bank branches in Milwaukee County on December 15, 2011. The two forgeries were contained in a single count that was filed on January 16, 2012.

¶65 Alexander pled guilty to the single count on February 21, 2012, before Milwaukee County Circuit Judge Jeffrey Wagner, who ordered a PSI. He was sentenced on the Milwaukee forgeries on April 10, 2012.

¶66 The agent who prepared the PSI for the court did not interview Alexander personally. Instead, the agent attached to the PSI certain admissions that Alexander made to another agent on December 30 after his December 27 arrest. The admissions acknowledged Alexander's involvement in additional forgeries in Waukesha County. The form on which Alexander made the admissions (DOC-1305) included the following language at the top of the form:

> I have been advised that I must account in a truthful and accurate manner for my whereabouts and activities, and that failure to do so is a violation for which I could be revoked. I have also been advised that none of this information can be used against me in criminal proceedings.

¶67 The essence of Alexander's grievance is that these admissions were confidential, could not be used against Alexander in any criminal proceeding, and should not have been attached to the PSI. He demands resentencing before a different judge, as ordered by the court of appeals.

1

¶68 There is no dispute that Alexander should have been interviewed personally by the PSI writer. If Alexander had been interviewed personally, he likely would have been asked about other forgeries because that information was known to the PSI writer. There also is no dispute that Alexander's admissions to the other agent should not have been attached to the PSI by the PSI writer.

¶69 Nonetheless, mistakes in criminal procedure are not uncommon and are normally evaluated in terms of their impact on the defendant. "The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party." Wis. Stat. § 805.18(1).

¶70 In this case, neither the defendant nor the defendant's attorney objected to the errant attachments. This failure to object amounted to a forfeiture and shifted the case to a claim of ineffective assistance of counsel. No matter how one looks at the case, however, the defendant bears the burden of showing that he suffered prejudice from any alleged error.

¶71 Plainly, there was no prejudice in this case. This is evident from the following historical facts.

¶72 First, the initial CCAP entry in the present case reads as follows: "01-16-12 Complaint filed. Additional text: OTP from Waukesha County" (emphasis added). This CCAP entry is in the record. OTP means "order to produce" from Waukesha County, implying that Alexander was in custody in Waukesha County. An inquiring mind would want to know why Alexander was in custody.

2

¶73 Second, the PSI contained a statement from the victim:

Mr. Harlan Peterson, Senior Fraud investigator for US Bank Corporation, was interviewed for the PSI. Mr. Peterson stated that he has been highly involved in this case as <u>there were several checks cashed by several suspects in a ring of fraudulent activities involving area businesses and US Bank, as well as other financial institutions</u>. Mr. Peterson stated, "I'm tired of the Danny Alexander's [sic] of the world who come into our banks and have the audacity to cash as many fraudulent checks as they want and leave. They are caught, because they usually don't care if they get caught; but at sentencing the Defense Attorney will say, 'well, it's only a couple thousand dollars.' Well here, we (US Bank) have a total loss of $12,000 from Danny and his accomplices. And that's just us; <u>there are other victims here and other pending cases</u>."

(Emphasis added.)

¶74 Third, the PSI also states, under the heading "PERSONAL HISTORY": "The defendant has five siblings: Jackie Alexander, John Alexander, Chris Alexander, Jamie Alexander, and Michael Alexander. <u>His brothers Chris, Jamie, and Michael are all suspects in offenses related to the present offense</u> in both Milwaukee and Waukesha Counties." (Emphasis added.)

¶75 Fourth, CCAP indicates that criminal charges were filed against Danny R. Alexander, Sr. in Waukesha County on March 13, 2012. Alexander was charged with <u>three</u> counts of violating Wis. Stat. § 943.38(2) (forgery-uttering).

¶76 The March 13, 2012, complaint was issued <u>before</u> the PSI in the Milwaukee case was filed (March 29, 2012) and <u>before</u> Alexander was sentenced in the Milwaukee case (April 10, 2012). Moreover, the Waukesha charges against Danny Alexander were part of a 15-count complaint filed against Danny's brothers, Christopher N. Alexander, Jamie D. Alexander, and Michael C.

3

Alexander, and three others. All defendants pled to the charges against them in due course, and all the Alexander brothers received felony convictions.

¶77 Is there any wonder then why there was no explicit discussion of the errant attachments to the PSI, which sugar-coated Alexander's involvement in a substantial forgery scheme?

¶78 Fifth, Danny Alexander was revoked on one of his multiple prior felony convictions on March 23, 2012 before he was sentenced on the Milwaukee forgery. His sentence on the Milwaukee forgery was made concurrent to the revocation sentence, so that he will serve less than two years of his three-year confinement in prison solely because of the Milwaukee conviction. Moreover, his sentence in Waukesha County on one felony count, plus two felony read-ins, was three years of extended supervision consecutive to the extended supervision in the Milwaukee case. In other words, the Waukesha County court gave him no additional prison confinement time for the three Waukesha County forgeries.

¶79 How exactly has the defendant been prejudiced by the mistaken attachments to the PSI? Inasmuch as I believe there is no convincing answer to this question, I respectfully concur in the majority opinion.

¶80 MICHAEL J. GABLEMAN, J. *(concurring).* I agree with the conclusion and analysis of the majority opinion and join it. I write separately, however, to explain that the court of appeals does, and should, have the power to raise and decide issues not briefed by the parties.

¶81 The court of appeals raised the issue of whether Alexander's counsel was ineffective sua sponte. Majority op., ¶13. The State argues that this was error because Alexander "forfeited" this argument, as he did not object to the statements in the PSI report at the circuit court or raise the issue to the court of appeals. Before this court, both parties briefed the issue of whether the court of appeals has the power to raise and decide on its own an issue that is not raised or briefed by the parties. The majority opinion does not address the issue squarely, but because it resolves the case on the issue of prejudice, rather than forfeiture, one might assume that this court agrees that the court of appeals has power to raise an issue sua sponte.

¶82 I believe that we should answer the issue briefed by the parties more directly and reaffirm our previous holdings concerning the power of the court of appeals in this regard.

¶83 Ordinarily, appellate courts "will not consider or decide issues which are not specifically raised on appeal." Waushara Cnty. v. Graf, 166 Wis. 2d 442, 451, 480 N.W.2d 16 (1992). However, it is axiomatic that this court is not bound by the issues presented or the arguments made by the parties. A similar principle applies to the court of appeals. See id. at

1

453 (noting that "the court of appeals had no obligation to look beyond the issues presented" but that "it was within the court's discretion to do so"). The court of appeals is primarily an error correcting court. Were it not allowed to reach certain issues not briefed by the parties, that purpose would be frustrated.

¶84 Contrary to the argument advanced by the State, the court of appeals does, and should, have the power to raise the issue of ineffective assistance of counsel on its own. In our "two-tiered appellate system, the court of appeals is destined to be the court of last resort for most cases." Vollmer v. Luety, 156 Wis. 2d 1, 15, 456 N.W.2d 797 (1990). While the court of appeals does not have the broad powers that this court has to review any issue, in order to fulfill its purpose as an error correcting court the court of appeals must be able to reach issues such as ineffective assistance of counsel even when they are not raised by the parties. See State v. Schumacher, 144 Wis. 2d 388, 408 n.14, 424 N.W.2d 672 (1988) ("the court of appeals' discretionary power must extend to a discretionary power to review such matters as . . . ineffective-assistance-of-counsel claims").

¶85 It will be the normal case where the parties to a particular action drive the litigation and frame the issues on appeal. However, there are situations in which an issue such as ineffective assistance of counsel is not raised, but should have been. In such a case it is appropriate for the court of

appeals, or this court, to raise the issue on its own, and, if the record permits, decide the case on that ground.

¶86 For the foregoing reasons, I respectfully concur.