COURT OF APPEALS
DECISION
DATED AND FILED

January 22, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP836-CR**

Cir. Ct. No. **2017CM1162**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

  V.

EDWARD L. BODY, SR.,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed.*

¶1      DAVIS, J.[1]     Edward L. Body, Sr., appeals from a judgment and order revoking his probation for the offense of disorderly conduct and sentencing him to one year in jail. He claims that the trial court relied on improper sentencing

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

factors, specifically his gender and certain information contained in a presentence report. He further claims that the sentence was unduly harsh. We disagree, and affirm, for the reasons stated herein.

*Facts*

¶2    This matter has its genesis in an incident that, according to the criminal complaint and not disputed here, occurred just after midnight on August 1, 2017. Two Kenosha police officers responded to a report of "people being loud in the street." Upon arrival, the officers observed Body yelling and pacing in the roadway. As the officers approached, they heard residents, who had congregated in the area, tell Body to stop yelling. One resident said, "Hey man. The police are here. Stop." Body responded, "I don't care. Fuck the police." A woman near Body identified herself as E.M. and told the officers she and Body had been arguing about issues concerning their children.

¶3    The officers spoke to some of the residents, including a neighbor who had told Body to "take his drama elsewhere" because it was creating a disturbance and disrupting him and his neighbors. The officers took Body into custody under a charge of disorderly conduct. A search incident to arrest revealed marijuana. The officers asked if Body had anything on him that would be harmful, and Body responded, "I just have some marijuana in my front pocket that I just bought." Several bags of a leafy substance, which tested positive for tetrahydrocannabinols (THC), were discovered on Body's person.

¶4    The criminal complaint alleged one count of disorderly conduct and one count of possession of THC, both as repeaters. Body pled guilty to the disorderly conduct charge in exchange for dismissal of the THC possession charge and no specific sentencing recommendation. The trial court placed Body on one-

year probation and withheld sentencing. The terms of probation included requirements that Body not commit further crimes or consume alcohol and that he report to his probation agent when required.

¶5 On August 7, 2018, the Department of Corrections issued a Revocation Order and Warrant, and Body was arrested for violating the terms of his probation. Body waived his revocation hearing, and the case was set for sentencing on the prior disorderly conduct charge.

¶6 At sentencing, it was noted that the revocation summary was part of the record and contained a reference to consumption of alcohol stemming from an incident involving domestic violence, which is described further below. No separate charges were filed in connection with this incident, but the offenses as described in the report were serious. Specifically, it was reported by the probation agent that on June 25, 2018, the agent had received an anonymous voicemail stating that over the weekend, Body had struck E.M. several times (this was the same woman who was part of the original incident for which Body was arrested). The next day, the agent received a call from E.M. herself detailing these incidents. E.M. reported that Body had come over on June 23, 2018, to visit their six-year-old son. Body left and then returned with a disposable cup from which E.M. took a drink, at Body's suggestion, and realized was vodka. She continued drinking with Body and, at some point, Body and E.M. got into an argument. Body spit in her face and began hitting her with a closed fist. E.M. further stated that their son heard the argument and tried calling 911, but Body grabbed the phone and threw it across the room. Body had a similar reaction when E.M. attempted to call 911, although she was able to make the call. E.M. was taken to the hospital with a possible broken jaw.

3

¶7 At the sentencing hearing, which was before the same judge who had previously withheld sentencing, Body did not take issue with the contents of the revocation summary, nor did he present evidence concerning the incident described in the report or anything else. In addition to the incident that led to the revocation, the trial court noted that Body had a lengthy background of incidents involving domestic violence. In light of this history, the trial court put sentencing over to another day in order to further review the record.

¶8 The adjourned sentencing hearing occurred on August 30, 2018. At the hearing, the trial court indicated that it had reviewed the revocation summary, as well as Body's record, and that the record demonstrated a propensity for threats and violence towards women. Specifically the trial court indicated that his sentence would be affected by "[Body's] long involvement with the law and persistent involvement with aggressive behavior with women, and to a lesser extent, his history of aggressive behavior with the police." The trial court sentenced Body to one year in jail. Body timely filed a postconviction motion for resentencing or, in the alternative, sentence modification. The trial court denied the motion on April 30, 2019. Body now appeals.

*The Trial Court Did Not Rely on Improper Sentencing Factors*

*in Imposing Body's Sentence*

¶9 "We review a motion for sentence modification by determining whether the trial court erroneously exercised its discretion …." **State v. Noll**, 2002 WI App 273, ¶4, 258 Wis. 2d 573, 653 N.W.2d 895. A sentencing court erroneously exercised its discretion where it "actually relie[d] on clearly irrelevant or improper factors." **State v. Harris**, 2010 WI 79, ¶66, 326 Wis. 2d 685, 786 N.W.2d 409. The defendant bears the burden of proving, by clear and convincing evidence, the trial court's actual reliance on such factors. **Id.**; *see also* **State v. Alexander**, 2015 WI 6, ¶17, 360 Wis. 2d 292, 858 N.W.2d 662. Where, as here, the challenge is to a sentence after revocation, "we review both the original sentencing and the sentencing after revocation 'on a global basis, treating the latter sentencing as a continuum [] of the first.'" **State v. Reynolds**, 2002 WI App 15, ¶8, 249 Wis. 2d 798, 643 N.W.2d 165 (2001) (citation omitted). Where, again as here, "the same judge presides at both proceedings, the judge 'should reference the prior sentence' at the sentencing after revocation, but need not 'restate the reasons supporting the original sentencing' because 'we will consider the original sentencing reasons to be implicitly adopted.'" **Id.** (citations omitted).

¶10 Body claims that the trial court relied on multiple improper sentencing factors, all of which stem from the contents of the revocation packet. Initially, Body claims that the revocation packet "was improperly used for a gender bias." In support, Body cites to snippets of the transcript, in which the trial court was critical of Body's interactions with women. According to Body, this shows that the trial court relied on an improper sentencing factor—specifically, Body's gender. The portion of the transcript referenced reads, "[Body] seems to have interpersonal relationship problems with women and with police officers."

5

Addressing Body directly, the trial court and Body also engaged in the following colloquy:

> THE COURT: So now he is back again, and his most recent episode for which he was revoked is punching a woman repeatedly.
>
> Do you think that is a manly thing to do?
>
> MR. BODY: No.
>
> THE COURT: What do you think other men think of someone who slaps a woman around?
>
> MR. BODY: I don't think they think highly of them.
>
> THE COURT: Do you think that is the limit of what they think?
>
> MR. BODY: I can't presume to know what somebody else knows. I can only assume they don't think highly of them.
>
> THE COURT: What do you think I think right now?
>
> MR. BODY: I don't know. I won't know until you tell me, sir.

¶11 Although the trial court was clearly troubled by Body's history of violence towards women and apparently wanted to send a strong message to that effect, this does not evidence any particular bias towards men. Body cites no authority to suggest otherwise. Although gender bias would unquestionably constitute an improper sentencing factor, it was not shown on this record in any respect, let alone by clear and convincing evidence.

¶12 Next, Body contends that the trial court erred by relying on "uncharged allegations" contained in the revocation packet. Body cites no case law for this proposition, and in fact the law is directly opposite.

¶13　Sentencing courts are required to assess "three primary factors": the gravity of the offense, character of the defendant, and the need to protect the public. *Alexander*, 360 Wis. 2d 292, ¶22. In addition, trial courts are authorized to consider additional factors, including

> (1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention.

*Id*. The court is required to conduct an individualized inquiry with the defendant based on the facts of the case. The inquiry "may include 'identifying the most relevant factors and explaining how the sentence imposed furthers the sentencing objectives.'" *Id.* (citation omitted).

¶14　Body claims that the trial court erred by relying on the revocation summary as bearing on these factors because it consisted of uncharged and unproven offenses. But the fact that the offenses are unproven does not in and of itself make their consideration improper. Indeed, our supreme court has repeatedly made clear that "[t]he scope of the information that a court may consider includes 'not only uncharged and unproven offenses but also facts related to offenses for which the defendant has been acquitted.'" *State v. Salas Gayton*, 2016 WI 58, ¶23, 370 Wis. 2d 264, 882 N.W.2d 459 (quoting *State v. Frey*, 2012 WI 99, ¶47, 343 Wis. 2d 358, 817 N.W.2d 436).

¶15　Body's final argument concerning the revocation report is that it constitutes hearsay. This argument also fails. No objection was lodged at

sentencing on this basis, meaning the argument was forfeited. In any event, we do not see how the trial court could have sustained any such objection. The rules of evidence do not apply at sentencing hearings, WIS. STAT. § 911.01(4)(c), and it is well established that hearsay may be admitted at such a proceeding, *State v. Scherreiks*, 153 Wis. 2d 510, 521-22, 451 N.W.2d 759 (Ct. App. 1989); *State v. Mosley*, 201 Wis. 2d 36, 45, 547 N.W.2d 806 (Ct. App. 1996).[2]

¶16    To the extent this rule opens the door to evidence that might not bear directly on the crime for which sentence is being imposed, and evidence that would not otherwise be admissible under the rules of evidence, the easy answer is that sentencing inherently and routinely involves consideration of such information, and defendants seeking a more favorable sentence should obviously be prepared to address it. In this case, that would include rebuttal of the information in the revocation report, if it was capable of being rebutted.[3]

*The Sentence Was Not Unduly Harsh*

¶17    In contesting the harshness of his sentence, Body correctly acknowledges both that the standard of review is erroneous exercise of discretion

---

[2] The State argues that the revocation report is also admissible under the public records exception contained in WIS. STAT. § 908.03(8), citing *State v. Winant*, No. 2014AP1944, unpublished slip op. (WI App July 21, 2015). In light of our conclusion under WIS. STAT. § 911.01(4)(c), we need not address this issue directly. We do note that unlike in *Winant*, no authenticating witness testified in this case, and further, that *Winant* involved a civil proceeding in which the "hearsay within hearsay" concern is expressly resolved by the express language of the public records exception, which allows "*in civil cases and against the state in criminal cases*, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Sec. 908.03(8)(c) (emphasis added).

[3] To the extent Body did not wish to testify (as was his right) he could have nonetheless called witnesses, including E.M., if he believed the uncharged offenses were without merit or that her account as described in the revocation report was false.

and the strong policy against interference with that discretion. A sentence will be deemed unduly harsh only if it is "so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Daniels*, 117 Wis. 2d 9, 22, 343 N.W.2d 411 (Ct. App. 1983); *see also State v. Grindemann*, 2002 WI App 106, ¶31, 255 Wis. 2d 632, 648 N.W.2d 507.

¶18    Body cannot overcome this high bar. "A sentence well within the limits of the maximum sentence is unlikely to be unduly harsh or unconscionable." *State v. Scaccio*, 2000 WI App 265, ¶18, 240 Wis. 2d 95, 622 N.W.2d 449. Therefore, the already high standard for reversal becomes even more difficult to overcome in this case. Here the sentence was well below the maximum range, which was two years' imprisonment. Although the trial court exceeded the recommendation of the author of the revocation packet, that recommendation is not a baseline for what is a legally-permissible sentence. The trial court adequately set forth its reasoning for the sentence it chose—a pattern of unlawful behavior with a propensity for domestic violence. The trial court further elaborated on this reasoning in denying Body's postconviction motion, noting that there was "[n]o precedential authority" for Body's assertion that a sentence four times in excess of the recommended sentence was per se unreasonable and unjustified. We agree. There is no basis for reversal.

    *By the Court.*—Judgment and order affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

9