COURT OF APPEALS
DECISION
DATED AND FILED

June 20, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP1870-CR**

Cir. Ct. No.  2022CF17

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

PAUL S. SCHRAVEN,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waushara County:  CHAD A. HENDEE, Judge.  *Affirmed.*

Before Blanchard, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Paul Schraven appeals the sentence imposed following his conviction for repeated sexual assault of a child and the circuit

court's denial of his postconviction motion for resentencing. Schraven argues that the court at sentencing relied on inaccurate information concerning the maximum permitted period of confinement in prison. We conclude that Schraven fails to show by clear and convincing evidence that the court relied on the inaccurate information and accordingly we affirm.[1]

## BACKGROUND

¶2 Schraven was charged with repeated sexual assault of a child, exposing genitals to a child, and tampering with a global positioning system tracking device, in each instance as a repeat offender. He entered a no contest plea to the sexual assault charge (without the repeater penalty enhancer), and the other two charges were read in for sentencing purposes. At the plea hearing, the court told Schraven that the maximum period of confinement that the court could impose would be 40 years, and this was an accurate statement. *See* WIS. STAT. § 948.025(1)(d) (2021-22) (the Class B felony of committing at least three violations of WIS. STAT. § 948.02(1), which defines various categories of first degree sexual assault of a child); WIS. STAT. § 939.50(3)(b) (Class B felonies have maximum periods of imprisonment of 60 years); WIS. STAT. § 973.01(2)(b)1. (Class B felonies have maximum periods of confinement in prison of 40 years).[2]

¶3 The court did not order a presentencing investigation report. The prosecutor and defense counsel each filed with the court a letter addressing

---

[1] Given this conclusion, we need not and do not address the State's alternative arguments that Schraven forfeited appellate review of his inaccurate information argument by failing to object at the time of sentencing and that, if the circuit court committed error, it was harmless.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

sentencing topics. Now on appeal, neither side questions the accuracy of any factual assertion in the other side's sentencing letter.

*Prosecutor's Sentencing Letter*

¶4 The prosecutor's sentencing letter included the following assertions. At the time of the sexual assaults, the victim was six. The victim's mother, who was dating Schraven at the time of the assaults, was convicted of three offenses related to Schraven's criminal conduct in this case: failure to act to prevent sexual assault of a child (the assaults committed by Schraven); neglecting a child with the consequence of sexual assault (again, the assaults committed by Schraven); and harboring a felon (Schraven).

¶5 The victim reported that Schraven had touched her "pee area," and made her place her mouth on his penis. At the time, the victim viewed Schraven as a father figure.

¶6 Schraven's criminal history included convictions on six counts of possession of child pornography in two 2014 cases, for which he received a sentence of seven years initial confinement and ten years extended supervision. In addition, offenses read in for purposes of sentencing in the 2014 cases included charges that Schraven had sexual contact with two different girls.

¶7 Schraven had only recently been released on extended supervision from the 2014 cases when he committed the sexual assaults at issue here, and he was prohibited from having contact with the victim in this case as a condition of his supervision in the 2014 cases. As a result of his sentence on the child pornography convictions, Schraven was required by the Department of Corrections to wear a bracelet that tracked his whereabouts.

¶8      After the victim's mother learned that the victim had told authorities that Schraven had sexually assaulted her, Schraven cut off the tracking bracelet. Following the filing of charges against Schraven in this case, he and the victim's mother were arrested in Mississippi following a high-speed chase, during which they tossed cellular phones out of their vehicle.

¶9      Based on all of these facts, the prosecutor wrote:

> The defendant is a dangerous person who is a threat to young children, and the public needs to be protected from him for a long time to come. Accordingly, the State recommends that the court sentence the defendant to 32 years of initial confinement and 18 years of extended supervision [concurrent to the sentence after revocation he was then serving].

*Defense Counsel's Sentencing Letter*

¶10     The defense sentencing letter contained the following assertions. "Throughout his adult life Mr. Schraven has maintained employment and when available to do so has contributed financial support towards his children." Schraven furthered his education during his prior prison term and "has maintained familial bonds with his mother, father, and brother."

¶11     When released from prison in March 2021, Schraven tested as "low" (level 3) for the general risk of recidivism and "low" (level 1) for the specific risk of violent recidivism, and his "driver" for risk was identified as deviant sexual interests. He "has a rehabilitative need," namely, deviant sexual interests, which "can be met through institutional programming to reduce [the] risk of reoffending."

*Sentencing Hearing*

¶12 The prosecutor repeated the statements made in the letter summarized above, all of which the prosecutor said demonstrates that Schraven "is a danger and a threat to other young children." The prosecutor described the sexual assaults here as being among "the worst acts that could be committed" and "very, very aggravated." The prosecutor emphasized that, at the time of the sexual assaults, Schraven was on Department of Corrections supervision following multiple convictions for possession of child pornography. "I think he needs to be in [prison] until he is an old man in order to make sure that he is not going to be a threat to another young child." The prosecutor noted that the victim's mother, in her related cases, had just received a sentence of 14 years of initial confinement, 10 years of extended supervision, and consecutive probation—and unlike Schraven, she did not sexually assault the victim, nor did she have a criminal record.

¶13 Defense counsel also echoed points made in the defense sentencing letter and made arguments that included the following, all in support of a request for a sentence of 15 to 20 years of initial incarceration and a maximum term of extended supervision of 20 years, concurrent with his sentence after revocation. Schraven's criminal conduct was "inextricably intertwined" with the related criminal conduct of the victim's mother, including their flight together to Mississippi, and therefore their sentences should be comparable. Schraven entered a plea in part to "avoid the need for the victim to testify or to put anyone involved through the experience of a trial." Schraven needed sex offender treatment and programming, which he had previously begun in prison and could continue on his return to prison. The fact that he would be placed on the lifetime sex offender

registry and lifetime GPS monitoring reduces the potential risk to others once he is released from prison.

¶14 In his allocution, Schraven apologized for his criminal conduct. He also said that he has cardiac issues that will shorten his life, and therefore a long prison sentence would likely result in his death in prison. He further said that he wanted a chance to finish the sex offender treatment that he had started during his previous prison stint, which would help him "show that I can rise above this past and be a better person."

¶15 The circuit court made comments that included the following. Schraven's offense is "one of the most heinous crimes" that anyone can commit. As a father figure to the victim, Schraven violated her trust "in the most despicable way possible," and "she is going to live with" memories of the assaults for "the rest of her life." "After getting released from a substantial prison term, [Schraven] made a choice over and over and over again to do this, and not only have … contact [with the victim,] but then violate and abuse this child." The court rejected the defense argument that Schraven's conduct was comparable to the related conduct of the victim's mother that resulted in her convictions, because it was Schraven alone who acted as a "predator" in actually committing the sexual assaults.

¶16 Regarding mitigating factors, the circuit court said that it "appreciate[d]" Schraven's allocution and his entry of the plea of no contest to avoid the need for a trial. It also acknowledged his "heart problems and health issues." The court also conceded that Schraven had low recidivism risk scores from March 2021, but said that the court's own assessment was that there "absolutely" is a risk of recidivism.

¶17     The circuit court said that Schraven's crimes "are something that cannot go unpunished," and further observed that sentencing was also "very much" about "protecting the public and giving this victim at least solace that [Schraven is] not going to be [outside prison] for a good period of time." "[T]he fact is there is a possibility that" Schraven, if not in prison, would victimize a child "again."

¶18     The elements of the sentence imposed by the circuit court pertinent to this appeal were 30 years of initial confinement and 20 years of extended supervision, concurrent to his current sentence. The court said that this would mean Schraven would be confined until he is "74 years old or so," which is "something I don't take lightly."

¶19     The court explained its decision to Schraven in part as follows: "Quite frankly, sir, I was going to go higher. At the same [time], the reason that I didn't is that you are taking responsibility. You did not put that little girl through a trial."

¶20     Turning to the focus of this appeal, the court made the following specific references to the maximum period of initial confinement, which was in fact 40 years and not 46 years, given that the repeater enhancer was dropped at the time of the plea:

- "Honestly, this could have been a maximum sentence, in the Court's view, but I am giving you some credit in the sense that you didn't put her through that, and there is a value to that."

- "As far as seriousness [of the offense], the legislature says that the maximum penalty, maximum time in prison is 40 years in prison. Now, because of the enhancer, an extra six years even, so to say that it is serious is just an understatement."

- "Now, what is the right number? There is no magic formula here that says what it is. The legislature says that it could be up to 46 years. The State is arguing for 32 years of initial confinement and 18 years of extended supervision. Your attorney is arguing for 15 to 20 years."

*Postconviction Hearing*

¶21 Through counsel, Schraven filed a postconviction motion for resentencing, making the same argument that he now advances on appeal. The State opposed the motion.

¶22 At a hearing on the motion, defense counsel argued that the transcript from the sentencing hearing reflects that the circuit court credited Schraven with 16 years (*i.e.*, the court reduced by 16 years what would otherwise have been the sentence) for accepting responsibility for his crimes—arriving at 30 years for the initial confinement period by subtracting 16 from the (false) maximum of 46.

¶23 The prosecutor pointed out that the State had not asked for an initial confinement period beyond 40 years and contended that, in arguing that the sentencing court subtracted 16 from 46 to reach 30, defense counsel was "oversimplifying" the court's "very lengthy analysis" at sentencing.

¶24 The circuit court acknowledged that it had inaccurately treated the repeater allegation at sentencing as if Schraven had entered a plea to that allegation, and that as a result the court had misstated the maximum period of confinement. The court attributed the mistake to its having looked at the criminal information without recalling that Schraven had not entered a plea to the repeater allegation. But the court rejected the defense position that it had used the "formula" of starting from the maximum period of initial confinement and

reducing that by 16 years. Instead, the court said, it settled on 30 years as "the appropriate sentence based on the factors that I had to look at," and that this included giving Schraven "credit for accepting responsibility" by coming down to 30 years of initial confinement from the State's recommendation of 32 years. The court specifically found that it had not relied "in any way" on the concept that the initial confinement maximum was 46 years in determining an appropriate sentence.

¶25 Schraven appeals.

## DISCUSSION

### A. Legal Standards

¶26 Defendants in criminal cases have constitutionally protected due process rights to be sentenced based on accurate information. *State v. Travis*, 2013 WI 38, ¶17, 347 Wis. 2d 142, 832 N.W.2d 491; *see also id.*, ¶¶9-10, 26, 32-33, 49 (circuit court improperly based sentence on explicit and repeated references to inaccurate information that defendant was subject to a mandatory minimum five-year term of initial confinement). "A criminal sentence based upon materially untrue information, whether caused by carelessness or design, is inconsistent with due process of law and cannot stand." *Id.*, ¶17.

¶27 A sentencing court is required to articulate the basis for imposition of a sentence. *State v. Alexander*, 2015 WI 6, ¶25, 360 Wis. 2d 292, 858 N.W.2d 662. "This articulation plays an important role in determining whether the circuit court actually relied on an improper factor." *Id.* "We review the circuit court's articulation of its basis for sentencing in the context of the entire sentencing transcript to determine whether the court gave 'explicit attention' to an improper

factor, and whether the improper factor 'formed part of the basis for the sentence.'" *Id.* (quoting *State v. Tiepelman*, 2006 WI 66, ¶14, 291 Wis. 2d 179, 717 N.W.2d 1; *Travis*, 347 Wis. 2d 142, ¶¶ 28, 31).

¶28 It is the defendant's burden to establish that there was inaccurate information before the sentencing court and that the court actually relied on that information in arriving at an aspect of the sentence. *Tiepelman*, 291 Wis. 2d 179, ¶31. The showing of actual reliance must be established "by clear and convincing evidence." *Travis*, 347 Wis. 2d 142, ¶22. If those showings are made, the burden shifts to the State to show that the error of relying on inaccurate information was harmless. *Tiepelman*, 291 Wis. 2d 179, ¶31.

¶29 Our review is de novo. *Travis*, 347 Wis. 2d 142, ¶9 n.9. "A reviewing court must independently review the record of the sentencing hearing to determine the existence of any actual reliance on inaccurate information. A circuit court's after-the-fact assertion of non-reliance on allegedly inaccurate information is not dispositive of the issue of actual reliance." *Id.*, ¶48.

### B. Analysis

¶30 When viewed in isolation, the circuit court's multiple references at sentencing to the inaccurate maximum confinement period could suggest that the court gave the inaccurate maximum "'specific consideration'" in a way that caused it to "'form[] part of the basis for the sentence.'" *See id.*, ¶¶22, 28 ("Whether the circuit court 'actually relied' on the incorrect information at sentencing, according to the case law, turns on whether the circuit court gave 'explicit attention' or 'specific consideration' to the inaccurate information, so that the inaccurate information 'formed part of the basis for the sentence.'" (quoting *Tiepelman*, 291 Wis. 2d 179, ¶14, in turn quoting *United States ex rel. Welch v.*

*Lane*, 738 F.2d 863, 866 (7th Cir. 1984))). But based on our review of the relevant aspects of the record as a whole, we conclude that Schraven fails to meet his burden by clear and convincing evidence. This is because aspects of the record lend support to the court's own opinion, reached after the court refreshed its memory with the record, that the court relied entirely on multiple other factors. This included focusing on the recommendations of the parties in arriving at the 30-year period, but not focusing on the statutory maximum.

¶31 The following aspects of the record support our conclusion that Schraven has not produced clear and convincing evidence that the circuit court relied on the inaccurate maximum confinement period. It is true that at sentencing the circuit court observed that "this could have been a maximum sentence," and that "there is value to" the fact that Schraven decided to plead no contest. However, in specifically addressing "the right number," the court explained that it was not depending on any "formula." This undermines Schraven's position that the court, wholly or in part, subtracted 16 from 46 to reach 30. Further, in addressing "the right number" at sentencing, the court referred to the recommendations of the parties and not to the erroneous maximum confinement period.

¶32 One reasonable interpretation of the circuit court's sentencing statement that, "[a]s far as seriousness [of the offense], the legislature says that the maximum penalty" is 46 years, "so to say that it is serious is just an understatement," is that the court was merely using the concept of a long maximum confinement period as a proxy for the seriousness of the sexual assaults. Understood in that context, the difference between the very long maximum of 40 years and somewhat longer maximum of 46 is not meaningful.

11

¶33 Schraven argues on appeal that the statutory maximum penalty "must always inform the court's discretionary determination of the appropriate sentence." It is of course true that a sentencing court may not impose a sentence in excess of a statutory maximum, and in that sense every sentence must at least implicitly take into account these ceilings. But Schraven cites no authority for the proposition that a sentencing court is required to start with a statutory maximum and then apply reductions and additions based on various factors, and he fails to show by clear and convincing evidence that the court did so here.

¶34 Schraven suggests that the circuit court's after-the-fact assessment was to the following effect: the court could now justify the initial confinement period of 30 years, even if it had relied to some degree at sentencing on the inaccurate statutory maximum. *See Travis*, 347 Wis. 2d 142, ¶47 ("'The fact that other information *might* have justified the sentence, independent of the inaccurate information, is irrelevant when the court has relied on inaccurate information as *part* of the basis of the sentence.'" (emphasis in original) (quoting *Welch*, 738 F.2d at 867)). We disagree with this interpretation of the court's statements.

¶35 We agree with Schraven that our primary focus must be on the sentencing transcript and that the circuit court's after-the-fact assessment is entitled to lesser weight. *See State v. Coffee*, 2020 WI 1, ¶38, 389 Wis. 2d 627, 937 N.W.2d 579 (characterizing the sentencing transcript as the "most important piece of evidence"). We disagree with Schraven, however, that the court's assessment in response to the postconviction motion is "irrelevant." The court's assessment is "not dispositive," *see Travis*, 347 Wis. 2d 142, ¶48, but it contributes to Schraven's inability to make a showing of reliance by clear and convincing evidence.

¶36 For all of these reasons, we affirm the judgment of conviction and the order denying the postconviction motion.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.