COURT OF APPEALS
DECISION
DATED AND FILED

January 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP114-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF280

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

ALFONZO MORALES,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Alfonzo Morales appeals a judgment convicting him of first-degree sexual assault of a child (sexual contact with a person under

age thirteen), two counts of contributing to the delinquency of a child, and possession of tetrahydrocannabinols. He also appeals an order denying his postconviction motion for resentencing. Morales asserts that he is entitled to resentencing because: (1) comments made by the circuit court during his sentencing hearing showed that the court was objectively biased; and (2) the court relied on an improper factor at sentencing—namely, Morales's exercise of his constitutional right to remain silent. We reject these arguments and affirm.

## BACKGROUND

¶2 The charges against Morales were based on allegations that he provided marijuana to two minor females and sexually assaulted one of them. At Morales's jury trial, the victims testified that they met up with Morales at Erb Park in Appleton.[1] Morales provided them with marijuana, which they smoked with him in his truck. At some point, Morales moved into the back seat of the truck, where the girls were sitting, and began "dry humping" one of the girls and touching her breasts and "butt area." The girl told Morales to stop and tried to push him off, but he continued assaulting her. Morales testified at trial and admitted giving the girls marijuana, but he denied touching either of them sexually. The jury found Morales guilty on all counts.

¶3 At the beginning of Morales's sentencing hearing, after ascertaining that neither Morales nor his attorney had any corrections to the presentence investigation report (PSI), the circuit court addressed Morales personally, stating, "It seems like you have been a complete troublemaker while you have been in the

---

[1] Morales represented himself at his jury trial, with the assistance of standby counsel. Morales was represented by counsel at his sentencing.

jail, and I will cover that with you later. But I don't know how many violations you have had—incidents of trouble that you have caused, and why is that?" Morales responded, "Well, life is hard, Your Honor. And I'm not a perfect man." The following exchange then occurred:

> THE COURT: Life is hard, and I'm not perfect. I have no idea what that means other than, no kidding life is hard, and you're not perfect. None of us are. But I read, you know, on page 8 turning onto page 9, appearing on page 10 [of the PSI], almost three whole pages of misconduct that you had in the jail. It jumps out at me. I've been doing this 17 years, and I think in 17 years of this there's been a handful of people who have caused that type of trouble in the jail. And I thought I'd just ask it right up front, but your answer is you're just not perfect, and that's going to be who you are?

> [MORALES]: Well, like I said, Your Honor, it's hard, you know, in the way they treating us in jail, you know, so I—I don't know. I guess what I'm trying to say—they only show the bad side of me. They never show the good side.

> THE COURT: Okay. Well, what's the good side?

> [MORALES]: Well, good side is, like, you know, I've been trying, you know, to change. I have been doing good things in there, and interact with all the people, and try to, I guess, change our life and—and try to basically do good, you know.

> THE COURT: I said, "What are the good things?" So what's the list of good things? Because there's a long list of bad things.

> [MORALES]: I didn't make no list.

> THE COURT: Okay. And you don't have a list. Number one is what? Number two is what?

> [MORALES]: I don't have a list, like you said.

> THE COURT: Okay. All right.

¶4     The State then read a statement from the sexual assault victim's mother, and it subsequently recommended that the circuit court sentence Morales

to nine to thirteen years of initial confinement followed by at least ten years of extended supervision. The State argued that the sexual assault charge was "among the most serious offenses" and was aggravated "by the fact that drugs were involved." The State also emphasized Morales's poor character, given his "21 violations while in jail"; his consistent use of aliases; his refusal to provide information to the PSI writer; and his trial testimony, which treated the crimes as "no big deal."

¶5     Morales's attorney, in turn, recommended that the circuit court impose five to seven years of initial confinement followed by a "longer" period of extended supervision. Defense counsel emphasized Morales's positive characteristics, including his extended periods of employment and the fact that he did not have a history of "this sort of behavior." Following defense counsel's recommendation, Morales declined to exercise his right of allocution.

¶6     The circuit court began its sentencing remarks by stating:

> Mr. Morales, last night after work I left here and I met my daughter, who is a high school student, at Erb Park to play tennis, which we frequently do during the months that that tennis court is open in the spring, and summer, and fall. And when I was at Erb Park last night I couldn't help but think that, you know, today I'm going to be sentencing someone who back in March of 2021, at whatever age you are—late 30s, meets two young, pre-teenage girls, gets in the back of his vehicle—in the back seat with them, takes off his shoes, gives them drugs, uses drugs with them, and then sexually assaults one of them.
>
> …. And when I was there last night, you know, you—the swimming pool is open and there's hundreds of kids—and basketball courts, and volleyball courts, and tennis courts, and people running and walking, and kids biking. And all in the midst of what should be a, you know, good, safe, public park, is where you're engaging in this serious criminal conduct.

¶7      The circuit court then explained that, when sentencing Morales, it needed to consider the seriousness of the offenses, Morales's character, and Morales's risk of reoffending, as those factors related to the sentencing goals of punishment, rehabilitation, deterrence, and community protection.  The court stated that its "biggest concern" in sentencing Morales "is not really knowing who you are."  The court emphasized the lack of useful information about Morales's history in the PSI, which resulted from Morales's frequent use of aliases, his refusal to sign a release for certain records, and his refusal to provide information about his age and date of birth.  The court also noted that Morales had refused to participate in an appointment with the PSI author or to provide the PSI author with his version of the offenses.  The court commented:

> I'm not convinced that we have a complete or a full record of who you are and—and what you have done, whether it's good or bad.  I tried to ask you what the good things in the jail were, and your response to me was basically consistent with your response to everybody else, and that is basically "shove it," you're not going to answer questions.
>
> ….
>
> So you've taken an approach to be uncooperative, and to not sign releases or provide information that would maybe either be beneficial, or maybe it would be detrimental or hurtful to your position.  But it is sort of an unknown on who you are and what you have done, and so I'm going to stick with what we do know.

¶8      The circuit court then stated that Morales's offenses were "very serious."  The court emphasized the age difference between Morales and the victims and the fact that Morales had a longer-term relationship with one of the victims and a history of giving her marijuana.

¶9      The circuit court next stated that Morales's character was "really poor."  It described Morales as "defiant," "dishonest," and exhibiting "a consistent

pattern of disrespect." The court highlighted Morales's twenty-one conduct violations while incarcerated in the Outagamie County Jail awaiting trial. The court also noted that Morales had at least two prior convictions and had "been on the run for 16 years from New Jersey," where he had an outstanding warrant for felony burglary.

¶10 The circuit court then addressed Morales's risk to reoffend, which it characterized as "medium to high." In support of that assessment, the court cited both Morales's "poor character" and his trial testimony, which suggested his "ability to somehow justify hanging out with 12-year-olds, and almost believing that that is okay." Based on Morales's "failure to recognize the inappropriateness of that type of relationship," the court stated that Morales was "a high-risk to reoffend sexually" and that one of the court's "biggest concerns" in sentencing him was to "make sure" that he was "not in a position at any time in the future where [he could] victimize another young child."

¶11 Ultimately, the circuit court stated that its "primary motivation" in sentencing Morales was to "protect the community"—and, specifically, young children—from him. The court identified its additional sentencing goals as "imposing some amount of punishment" on Morales and providing him with opportunities for treatment and rehabilitation in order to reduce his risk of reoffending. The court then sentenced Morales to ten years of initial confinement followed by ten years of extended supervision on the sexual assault charge, consecutive to his sentences on the remaining charges, which totaled eighteen months in jail.

¶12 Morales filed a postconviction motion, arguing that he was entitled to resentencing for two reasons. First, Morales contended that the circuit court

6

was objectively biased because the judge "personalized the sentencing decision by considering the fact that [the judge] and his daughter play tennis in" Erb Park. Second, Morales argued that the court relied on an improper factor when it "drew negative sentencing inferences" from: (1) his failure to answer the court's question at sentencing about specific examples of his positive conduct in jail; and (2) his refusal to provide information to the PSI author. The court denied Morales's postconviction motion, and this appeal follows.

## DISCUSSION

### I. Objective bias

¶13     "The right to an impartial judge is fundamental to our notion of due process." *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385. When evaluating a claim of judicial bias, we apply a rebuttable presumption that a judge has acted fairly, impartially, and without bias. *Id.* A defendant may rebut that presumption by showing that the court was either subjectively or objectively biased. *Id.* Only objective bias is at issue here.

¶14     "Objective bias can exist in two situations." *Id.*, ¶9. First, "the appearance of partiality constitutes objective bias when a reasonable person could question the court's impartiality based on the court's statements." *Id.* Second, objective bias exists when there are objective facts showing that the court in fact treated a party unfairly. *Id.* Whether a judge was objectively biased is a question of law that we review independently. *See id.*; *see also State v. Herrmann*, 2015 WI 84, ¶23, 364 Wis. 2d 336, 867 N.W.2d 772.

¶15     Morales claims that the circuit court demonstrated objective bias at his sentencing because the judge's comments about playing tennis with his

7

daughter at Erb Park the night before Morales's sentencing show that "the judge was considering the possibility that it could have been his daughter who Morales sexually assaulted." Morales further argues that the court's comments "make[] it obvious that the judge was stepping into the shoes of the victim's family members." Additionally, Morales contends that the comments "permit the inference that the court's sentence was based not on the proper sentencing considerations; but, rather, upon the judge's personal need to protect his own daughter from persons like Morales." Morales therefore asserts that the sentencing comments, "at the very least," created the appearance of partiality.

¶16 We disagree. The circuit court judge merely recounted that he had gone to Erb Park with his daughter to play tennis the night before Morales's sentencing, which caused him to note that Morales had engaged in "serious criminal conduct" in "what should be a … good, safe, public park." The judge did not state that Morales's behavior at Erb Park impacted the judge's enjoyment of the park, caused him to fear for his daughter's safety, or caused him to fear for the safety of any other family members or friends. The judge's comments—made well after Morales's crimes were committed—demonstrated no personal connection to the crimes. Rather, the comments reflected a generalized concern about the safety of community members—and, particularly, children—at an otherwise safe public park. As such, the court's comments were directly related to its consideration of a proper sentencing objective—i.e., the protection of the public. *See State v. Gallion*, 2004 WI 42, ¶40, 270 Wis. 2d 535, 678 N.W.2d 197.

¶17 A comparison of this case with ***Herrmann*** is instructive. In ***Herrmann***, the defendant was convicted of multiple charges, including homicide by intoxicated use of a vehicle. ***Herrmann***, 364 Wis. 2d 336, ¶7. During the circuit court judge's sentencing remarks, the judge discussed "how drunk driving

affected her own life as her sister had been killed by a drunk driver," and she explained that she "understood the pain the families and victims were suffering." ***Id.***, ¶¶16-17.

¶18 Our supreme court concluded that these remarks did not demonstrate objective bias because, "when viewed in context, a reasonable person would not question the court's partiality based on these statements." ***Id.***, ¶49. The court explained that "although the judge's statements about her sister were personal, they were used in an attempt to illustrate the seriousness of the crime and the need to deter drunk driving in our society." ***Id.***, ¶60. Accordingly, the judge's comments were "consistent with the requirements placed on judges to discuss the objectives of the sentence" and any applicable aggravating factors. ***Id.***, ¶61. When viewed in that context, the judge's remarks did not "reveal a great risk of actual bias." ***Id.***, ¶66.

¶19 As the State correctly notes, the circuit court judge in this case was "far more detached from the facts of Morales's crimes than the judge in ***Herrmann***." Unlike the judge in ***Herrmann***, who had a direct, personal connection to the type of offense for which the defendant was being sentenced, the judge in this case merely commented that he had visited Erb Park with his daughter well after the commission of Morales's crimes. Moreover, like the judge's comments in ***Herrmann***, the judge's comments here were directly related to his consideration of a proper sentencing objective.

¶20 Under these circumstances, the circuit court judge's comments about playing tennis with his daughter at Erb Park do not provide any basis for a reasonable person to question the court's impartiality. *See **Goodson***, 320 Wis. 2d 166, ¶9. Nor do the comments provide any basis to conclude that the court

actually treated Morales unfairly. *See id.* Morales has therefore failed to demonstrate that the court was objectively biased.

## II. Improper factor

¶21 On appeal, we will affirm a circuit court's sentencing decision as long as the court did not erroneously exercise its discretion. *State v. Alexander*, 2015 WI 6, ¶16, 360 Wis. 2d 292, 858 N.W.2d 662. In exercising its sentencing discretion, a court must "specify the objectives of the sentence on the record." *Gallion*, 270 Wis. 2d 535, ¶40. Proper sentencing objectives include the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others. *Id.* "Primary factors informing those objectives are the gravity of the offense, the defendant's character, and the need to protect the public." *State v. Dodson*, 2022 WI 5, ¶9, 400 Wis. 2d 313, 969 N.W.2d 225.

¶22 An erroneous exercise of sentencing discretion occurs when a circuit court actually relies on an improper factor at sentencing. *Alexander*, 360 Wis. 2d 292, ¶17. A defendant bears the burden of proving actual reliance on an improper factor by clear and convincing evidence. *Id.* To do so, the defendant must show both that a particular factor was improper and that the court actually relied on that factor when imposing sentence. *See id.*, ¶¶18-21.

¶23 Morales contends that the circuit court actually relied on an improper factor at his sentencing when it considered both his failure to answer the court's question about any "good things" he had done in jail and his failure to provide information to the PSI author. As Morales correctly observes, a defendant "has a Fifth Amendment right not to be compelled to be a witness against himself [or herself]," and that right "continues … through sentencing." *See id.*, ¶24.

Morales therefore asserts that "it is improper for [a] court to draw a negative sentencing inference from the fact that, at sentencing, [a] defendant invokes his [or her] right to remain silent."

¶24 Morales's improper factor argument fails on the actual reliance prong of the test. To prove actual reliance on an improper factor, "a defendant must identify where in the transcript the circuit court both gave 'explicit attention' to an improper factor and made the improper factor a part of the 'basis for the sentence.'" *Dodson*, 400 Wis. 2d 313, ¶10 (citation omitted). "Therefore, a defendant will fall short of proving actual reliance if the transcript lacks clear and convincing evidence that the factor was the sole cause of a harsher sentence." *Id.* In addition, a defendant cannot show actual reliance if the court's reference to an allegedly improper factor bore a "reasonable nexus" to a relevant and proper sentencing factor. *Id.* (citation omitted).

¶25 Here, there is no clear and convincing evidence in the sentencing transcript that Morales's silence was the sole cause of a harsher sentence. *See id.* During its sentencing remarks, the circuit court appropriately considered the gravity of Morales's offenses; Morales's "really poor" character; and the need to protect the public—specifically, children—from Morales. The court then explained that, in imposing sentence, its "primary motivation" was "to protect the community." We agree with the State that the court's focus on that sentencing objective "had nothing to do with Morales's silence." Instead, the court concluded that Morales's own testimony at trial showed that he was a "high-risk to reoffend sexually" because he did not "recognize the inappropriateness" of his relationships with children. The court's conclusion in that regard had no relation to Morales's failure to answer the court's question about "good things" he had done in jail or to Morales's failure to provide information to the PSI author. On this record,

Morales has not shown that the court's consideration of his silence was the sole cause of a harsher sentence. *See id.*

¶26    Moreover, the circuit court's challenged comments bore a reasonable nexus to a proper sentencing factor—that is, the court's assessment of Morales's character. *See id.*, ¶¶9-10.  As the court correctly noted when denying Morales's postconviction motion, a sentencing court has a "responsibility to acquire full knowledge of the character and behavior of the convicted defendant before imposing sentence." *See, e.g.*, **State v. Frey**, 2012 WI 99, ¶45, 343 Wis. 2d 358, 817 N.W.2d 436.  During Morales's sentencing, the court was obviously frustrated about the lack of information that it had about Morales, which was due in large part to Morales's failure to provide information to the PSI author.  The court explained that its "biggest concern" in sentencing Morales was "not really knowing who you are."  The court emphasized that if Morales had provided more information to the PSI author, the information may have been beneficial or detrimental to him, but the court had no way of knowing.  The court therefore stated that, in sentencing Morales, it was "going to stick with what we do know."

¶27    Similarly, in asking Morales to provide specific examples of his positive jail conduct, the circuit court was attempting to obtain a complete picture of Morales's character before sentencing him.  Additionally, we agree with the State that the court's request for examples of Morales's positive jail conduct was "a natural follow-up to Morales stating that the jail report did not show the 'good side' of his behavior."  We further agree with the State that the court's subsequent comments about Morales's failure to provide specific examples of his positive jail conduct "had nothing to do with Morales asserting his right to remain silent and everything to do with [the court's] frustration that it had very limited information about Morales's character."

¶28    In sum, Morales has failed to present clear and convincing evidence that his silence was the sole cause of a harsher sentence. *See Dodson*, 400 Wis. 2d 313, ¶10. Furthermore, the sentencing transcript shows that the circuit court's comments about Morales's silence bore a reasonable nexus to a relevant sentencing factor. *See id.* We therefore reject Morales's claim that the court actually relied on an improper factor when imposing his sentences.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).